### The United States ex relatione Richard R. Crawford *v.* Henry Addison.

Where the matter in controversy was the right to the mayoralty in Georgetown, the salary of which office was $1,000 per annum, payable monthly, and the duration of which office was two years, this court has jurisdiction of a case coming up by writ of error from the Circuit Court of the United States for the District of Columbia.

The fact that the salary is payable monthly makes no difference; the appropriation, when made, being made for the whole sum.

A judgment of ouster being rendered in the Circuit Court, and the defendant having filed the necessary bond, and sued out a writ of error to this court, this amounts to a supersedeas upon the judgment.

The case is not a proper one for a mandamus from this court to the judges below, or for a rule upon them to show cause why they should not carry out the judgment of ouster.

The fact that the term of office will be about to expire when the writ of error is returnable, viz: December term, 1860, is not a sufficient reason for the interposition of this court at the present stage of the proceedings.

THIS was an application for a peremptory mandamus or for a rule to show cause why the judges of the Circuit Court of the District of Columbia should not execute a judgment in that court, by which Henry Addison had been directed to be

ousted of the mayoralty of Georgetown. Addison had sued out a writ of error, returnable to December term, 1860, and filed the usual bond, which the Circuit Court decided to amount to a supersedeas, and accordingly suspended the judgment of ouster. *Mr. Brent* and *Mr. Carlisle*, counsel for Crawford, filed his petition, accompanied by a transcript of the record, and moved for a peremptory mandamus or a rule to show cause. The motion was opposed by *Mr. Bradley* and *Mr. Henry Winter Davis*. The reporter has only notes of the arguments of *Mr. Carlisle* and *Mr. Bradley*.

It was agreed by the counsel, that the office of mayor, referred to in the proceedings in this case, is elected for two years, and that the salary is \$1,000 per annum, payable monthly. The record so stated.

*Mr. Carlisle* contended that the writ of error had been improvidently issued in this case, and consequently there was no supersedeas. The act of 1816 (3 Stat. at L., 261) provides that no cause shall hereafter be removed from the Circuit Court of the United States for the District of Columbia to the Supreme Court of the United States by appeal or writ of error, unless the matter in dispute in such cause shall be of the value of \$1,000 or upwards, exclusive of costs. He then made the following points:

1. Whether, assuming that the Government is entitled to execution of the judgment of ouster, and the relator to his execution for costs, the proper remedy is by mandamus from this court. That it is the proper and only adequate remedy where execution is improperly denied by the court below, and in other like cases, has been repeatedly held by this court

United States *v.* Peters, 5 Cranch, 115.

Livingston *v.* Dorgenois, 7 Cranch, 577.

Life and Fire Insurance Co. *v.* Wilson, 8 Peters, 303.

Postmaster General *v.* Trigg, 11 Peters, 173.

Stafford *v.* Union Bank of Louisiana, 16 Howard, 135.

Stafford *v.* Union Bank of Louisiana, 17 Howard, 276.

2. That it is mere matter of discretion, whether the rule to show cause or, to prevent delays, the alternative mandamus is to be granted. It must depend upon the nature of the case.

Life and Fire Insurance Co. *v.* Adams, 9 Peters, 571.

In the present case, the record shows in advance the sole cause against the mandamus. The question is concerning the title to an office of public trust, the term of which will be about immediately expiring at the commencement of the next term of this court. Nearly one-half the term has been consumed in the proceedings below; and as the record here shows, it is established by verdict and judgment, that during all the time which has elapsed, the office has been occupied without any lawful warrant, to the defeat of the popular will, in violation of the charter of the city, and to the prejudice of the relator's right. It seems not easy to imagine a case where the discretion of the court can be more appropriately exercised in dispensing with the rule, and proceeding at once to consider the cause shown.

It remains now to inquire whether the cause shown by the record is sufficient for the denial of the motion.

That cause is, that the judgment of ouster and for costs is superseded by reason of the matters in that behalf spread upon the record.

And the sole question now is, is the judgment effectually superseded under the statutes of the United States?

The means of determining the question are before the court, in the transcript filed with the petition.

It cannot be denied, that this court will entertain such a question, and determine the legality of the supposed supersedeas, where it is alleged as cause against the mandamus. The cases already cited abundantly show this. In the case in 16 Howard, this court itself suggested the remedy by mandamus, where a supersedeas had been improvidently allowed by the court below. And in the case in 5 Cr. (U. S. *v.* Judge Peters) the cause of refusing execution being shown to be an act of the Legislature of Pennsylvania, this court, upon the motion for mandamus, considered the constitutionality of that act, pronounced it unconstitutional, and awarded a peremptory mandamus.

So that it would seem, when the question of supersedeas or no supersedeas arises, and is necessary to be determined

upon a mandamus for execution, this court will determine every question, of whatever nature, necessarily involved in the principal inquiry.

In other instances, the question of the validity of the supersedeas has arisen here in cases where there was an admitted jurisdiction of the cases on writ of error or appeal—the question being whether, notwithstanding such admitted jurisdiction, the judgment or decree below ought not to be executed, by reason of a failure to comply with the terms of the statute regulating the supersedeas.

Here we maintain that there could be no possible superdeas, because the case is not one in which a writ of error lies.

If that writ of error were here, a simpler and more obvious course would be, to move to dismiss it. But the judgment below was rendered since the commencement of the present term of this court, and the writ is returnable to the next term, when the office will have nearly expired.

If it be clear that no writ of error lies, it would seem to be a singular defect in the law, if the successful party below can be practically and absolutely defeated of his right by the suing out of such writ. With a court below, scrupulous of deciding, in the first instance, the question of the jurisdiction of this court, it would be easy to imagine examples and to put cases where the cause of justice would be entirely perverted.

I propose, then, to show that there is no supersedeas, because no writ of error lies in such a case.

It professes to be sued out under the act of April 2, 1816, (3 Stat., 261.)

The section has been already recited.

Its language does not differ substantially from that of the 22d section of the act of 1789.

So far as it differs at all, it is more stringent and explicit. The original act was that of 27th February, 1801, (2 Stat., 106,) which uses affirmative language, allowing appeals, &c. This is negative, "that no cause shall, &c., unless, &c."

What is the "matter in dispute" in this cause? And what is "its value?"

It is a public office of personal trust and confidence.

It is not property in any sense of the term. It can neither be bought, nor sold, nor mortgaged, nor assigned. It cannot be aliened absolutely, or in any qualified form. It has none of the attributes which are inseparable from property. The proceeding below did not in any degree depend upon any profits to be earned in the office, or in any manner to arise out of it. The information would lie in the name of the United States, if the office were purely honorary, (as it is in effect, the salary being small,) it being an office of public trust, touching the rule and government of a city. It would lie as well on the relation of any private citizen and voter in the town, as on the relation of the true incumbent *de jure.*

Again: The record shows, by stipulation, that in fact there is an annual salary annexed to the office, payable month by month, as earned. This salary, if earned, for a whole year, would be one thousand dollars. Is a year's salary, or the salary for the whole term of two years, the matter in dispute here, or is the matter in dispute of that value? Clearly not. The judgment of ouster neither gives nor takes away the salary for the whole term, or for any part of it. When the information was filed, two months' salary had accrued; when the judgment was rendered, nine months' salary had accrued. During all this time, the defendant, as mayor *de facto*, received his salary, and the judgment could not deprive him of it. For the unexpired term, who will say, that if he be not ousted, he will live and earn the salary for any single month or day of it? And unless he live, and earn it, it matters not to him whether the judgment be reversed or not.

There is no value in dispute; for the services to be rendered by the defendant are to be taken as a full equivalent for the salary to be paid.

There is a wide difference between this case and that of a life estate in lands, or chattels, which, though it depend on life, is yet the subject of sale—is property—and its value in market may be ascertained.

With these principles in view, the following cases are referred to:

Ritchie *r.* Mauro, 2 Pet., 243.

Barry *v.* Mercein, 5 How., 103. (Op. Taney, C. J., 118.)

Scott *v.* Lunt, 6 Pet., 349, case of the rent charge of $73 per annum.

See the Argument of Swann, and the Op. of Marshall, C. J.

Grant *v.* McKee, 1 Pet., 248, where it was argued, that in substance and effect, a very large property was involved.

To the same effect is Ross *v.* Prentiss, 8 How., 772, and numerous other cases which might be cited.

Against these cases I am not aware of any which may be relied on by the other side, except the Col. Ins. Co. *v.* Wheeling, 7 Wheat., 534 ; and Lee *v.* Lee, 8 Peters, 44.

So far as these cases may be thought inconsistent with those cited by us, they are overruled by the latter.

The case in 7 Wheat. (decided in 1822) has been steadily adhered to by the court upon the principal point determined by it, and the only one which appears to have been argued, viz: that a judgment for mandamus is a final judgment. It was cited and reaffirmed for the purpose in the case of United States *v.* Kendall, and in the case of Holmes *v.* Jennison.

Having decided this point, the court directed the counsel for the plaintiff in error to produce affidavits of the value of the salary attached to the offices of directors of the company. But upon the production of them, the writ was quashed for want of jurisdiction.

In the case of Mauro *v.* Ritchie, 2 Peters, (1829,) the very question of value was the whole question. The court there, instead of directing affidavits, lay down the principle that an office which is of no value except so far as it affords compensation for labor and services, thereafter to be earned, is not the subject of a writ of error from the Circuit Court of this District.

And as to the case of Lee *v.* Lee, it is an exceptional case, which does not seem to be reconcilable with the uniform current of decisions in this court. It was decided in 1834, and there is only one member of the court (Mr. Justice McLean) who was then on the bench, and he appears to have concurred in its decision of Barry *v.* Mercein.

It is curious to contrast the conclusion announced in the case of Lee *v.* Lee with that of the latter case. In the former. the court took jurisdiction because liberty was "not susceptible of pecuniary estimation;" in the latter they disclaimed it, because the paternal rights, duties, and affections, were in like manner "utterly incapable of being reduced to any pecuniary standard of value, as it rises superior to money considerations."

*Mr. Bradley* made the following points:

1. The office of mayor of Georgetown is elective for two years; the salary is fixed by law at $1,000 a year, payable monthly.

2. By the act of 1816, 3 Stat., 261, sec. 1, this court has jurisdiction in cases where the pecuniary value of the thing in controversy is $1,000.

The value of an office is fixed by the salary annexed to it.

Wheelright *v* Columbian Ins. Co., 7 Wheat., 534.

3. The writ of mandamus is a high prerogative writ, and never to be used except where there is no other adequate legal remedy, and never where it would be nugatory.

Tappan on Mandamus, p. 15, and cases in notes.

The record and the return to the *certiorari* show that the jury first rendered a verdict, in substance, that neither of the candidates had the greatest number of legal votes, but it was a tie vote.

By the amended act of incorporation, 4 Stat., it is provided, in such case, that the councils of Georgetown shall in joint meeting elect a mayor from those having an equal number.

Therefore it is material that this court shall see upon what facts the jury passed, when they responded to the fourth issue, that Addison had not a majority of the legal votes.

And for this purpose it is competent to look behind the judgment and verdict.

1 Green. Evi., sec. 532, and notes.

The councils of Georgetown, as has been conceded in the argument, in point of fact, having been furnished with a copy of the verdict so returned by the jury in writing, proceeded to elect Mr. Addison in joint meeting, &c.

The mandamus, therefore, prayed for by this motion, would be nugatory—

Because it is clear, as between the real parties to this controversy, it has been ascertained by a competent authority that there was an equality of votes; and

Because the election subsequent to that finding is pursuant to the charter; and, Addison being rightfully in under this election, the writ of ouster could not remove him from the said office.

Mr. Justice McLEAN delivered the opinion of the court.

This is a writ of error to the Circuit Court of the United States for the District of Columbia.

Richard R. Crawford, of the city of Georgetown, in the District of Columbia, states, that on the fourth Monday of February, 1857, in pursuance of an act of Congress to amend the charter of Georgetown, approved the 31st May, 1830, and an act to amend the same charter, approved the 11th August, 1856, by ballot to elect some fit and proper person, having the qualifications required by law, to be mayor of the corporation of Georgetown, to continue in office two years, and until a successor shall be duly elected, said Crawford, being duly qualified, received the greatest number of legal votes, and was elected mayor of the said corporation, and took the oath as mayor, and continued to discharge the duties for two years.

On the fourth Monday of February, 1859, another election was held for mayor, at which he received the greatest number of legal votes, and was by the judges declared to be duly elected; on which he presented himself in the presence of the two boards of the common council of the said corporation, and claimed that the oath should be administered; but the said two boards, alleging that there was a mistake in the returns, and that there was in fact a majority of one vote in favor of Henry Addison, who was the opposing candidate, and to whom the oath of office was administered, and who took possession of the office, and continues to exercise the duties of the same.

And your petitioner represents, that at the ensuing term of

the Circuit Court of the District of Columbia, being the court then and still having jurisdiction in the premises, an information, in nature of quo warranto, upon the relation of your petitioner, was filed in the said court by Robert Ould, Esq., the attorney of the United States for the District of Columbia, on which due process was issued against the said Henry Addison, requiring him to answer before the said court by what warrant he claimed to exercise the said office of mayor of the corporation of Georgetown.

And the said Addison having pleaded to the said information, and certain replications having been made to said plea by the said attorney of the United States, certain issues were joined thereon at the October term, 1859, of the said court, and amongst others the issue to try whether the said Henry Addison had, as alleged by him in his plea, received the greatest number of legal votes for mayor at the said last-mentioned election; and upon the issue it was found by the jury, duly empannelled and sworn to try the same, that the said Henry Addison did not receive the greatest number of legal votes for mayor at the said election; and thereupon the said court rendered judgment of ouster against the said defendant, and for the costs of your petitioner, as relator in the said proceeding, to wit, on the —— day of December instant.

Whereupon due process for the execution of the said judgment, to remove the said defendant and for the recovery of the costs aforesaid, was duly prayed of the said court; but the said Henry Addison, pretending that the proceedings upon the said information in matter of law may be reviewed by this honorable court upon writ of error, sued out such writ of error, filed a bond, and caused a citation to be issued and served upon your petitioner, to appear and answer to the said writ of error on the return thereof, to wit, at the December term, 1860. And thereupon the said Circuit Court, for the express and sole reason that such writ of error and bond operated as a supersedeas, (which is expressed in their order in that behalf,) refused to execute the said judgment, or to issue any process to remove the said defendant or for the recovery of the costs aforesaid.

Your petitioner is advised, and humbly submits, that this honorable court hath no jurisdiction of the matter of the said writ of error, and that the same must be dismissed on the return thereof. But, as hereinbefore stated, the said writ is not returnable until December term, 1860, and the term of office for which your petitioner was elected as aforesaid will then be about to expire.

Your petitioner is advised that his only adequate and proper remedy is by a mandamus from this honorable court, directed to the judges of the said Circuit Court of the District of Columbia, commanding them to issue process for the execution of the judgment aforesaid. And for that the transcript of record herewith filed plainly expresses on its face the sole cause for the refusal of such process, so as distinctly to present the whole matter of law for the consideration of the court, he prays that a peremptory mandamus may issue, or, in the alternative, that such interlocutory order may be passed to that end, as this court may direct.

Under the thirteenth section of the judiciary act of 1789, the Supreme Court has "power to issue writs of mandamus, in cases warranted by the principles and usages of law, to any courts appointed or persons holding office under the United States." The power of the Circuit Courts to issue the writ of mandamus is confined exclusively to those cases in which it may be necessary to the exercise of their jurisdiction. Kendall *v.* United States, Curtis, 12th vol., 851.

On a mandamus, a superior court will never direct in what manner the discretion of an inferior tribunal shall be exercised; but they will, in a proper case, require the inferior court to decide. Life Insurance Company *v.* Wilson's Heirs, 8 Peters, 294. It has repeatedly been declared by this court that it will not by mandamus direct a judge as to the exercise of his discretion; but it will require him to act. 13 Pet., 279.

A mandamus is a remedy where there is no other appropriate relief, and it is only resorted to on extraordinary occasions.

The writ of error is a common law writ, and is almost as old as the common law itself. This writ, to operate as a

supersedeas, must be issued within ten days after the rendition of the judgment, and on security being given for a sum exceeding the amount of the judgment. Where no supersedeas is required, security for the costs of the Supreme Court must be entered. So that, in these respects, the writ of error is said to be a writ of right, though regulated by statute.

The condition on the supersedeas bond is: "that the said Henry Addison shall prosecute the said writ of error to effect, and answer all damages and costs if he shall fail to make his plea good; then the above obligation to be void; otherwise to be and remain in full force and virtue."

In the Columbus Insurance Company *v.* Wheelright and others, 7 Wheat., 534, it was held that a writ of error will lie from this court upon the judgments of the Circuit Courts awarding a peremptory mandamus, if the matter in controversy is of sufficient value. But in that case, it did appear that the office of director of the insurance company, which was the matter in controversy, was of less value than one thousand dollars, and that its value was to be ascertained by the salary paid; the court held it had no jurisdiction.

The weight of this authority is not lessened by the fact on which the question of jurisdiction turned. The salary of the mayor of Georgetown was established by law at one thousand dollars per annum; and if this be the matter of controversy it settles the jurisdiction.

But it is contended that a year's salary cannot be regarded as the amount in controversy, as the salary is paid monthly or quarterly, as may be most convenient to the mayor. The law regulates the pay of all salaried officers by the year, and the estimates are so appropriated in the reported bills. Any departure from this annual allowance would derange, more or less, the fiscal action of a Government or corporation.

But it is said that the remedy by writ of error is inappropriate and ineffectual, as the office of the relator will expire about the time the writ of error is made returnable. This may be a defect in the law, which the legislative power only can remove. A writ of error returnable instanter would give

more speedy relief, and might be more satisfactory, but we must administer the law as we find it.

The bond and security given on the writ of error cannot be regarded as an idle ceremony. It was designed as an indemnity to the defendant in error, should the plaintiff fail to prosecute with effect his writ of error.

We can entertain no doubt that the writ of error is the legal mode of revising the judgment of the Circuit Court in this case; and that security having been given on the judgment, as the law requires, it is superseded.

Mr. Justice WAYNE and Mr. Justice GRIER dissented.