CITY OF CLEVELAND et al. v. UNITED STATES ex rel. CUNNINGHAM.

(Circuit Court of Appeals, Sixth Circuit. February 11, 1904.)

No. 1,200.

1. MANDAMUS—PROCEDURE IN FEDERAL COURTS.

    Mandamus proceedings in a federal court to enforce payment of a judgment against a municipality are strictly legal in their nature, and should be conducted in conformity to the common-law practice. If the relator regards the return as insufficient in law he should demur, or join issue upon it if deemed untrue in its allegations of fact, and it is improper practice to refer a return and exceptions thereto to a master as in equity to hear evidence and report thereon, any order based on such report being reviewable in the appellate court only by writ of error.

In Error to the Circuit Court of the United States for the Eastern District of Tennessee.

Robert Pritchard and J. B. Sizer, for plaintiffs in error.

Brown & Spurlock, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. This is the third time in which the controversy in this case has, in one form or another, been before this court. In the case as reported in 98 Fed. 657, 39 C. C. A. 211, the receiver of the Cleveland Water & Electric Light Company sought, and by the award of this court recovered, a judgment against the city of Cleveland, a municipality of Tennessee, for the sum of $9,852.12, as damages for the refusal of the city to perform a contract with the Water & Electric Light Company for the supplying of water and light to the city and its inhabitants. Pursuant to the mandate of this court, the judgment for that sum and costs was entered in the Circuit Court in February, 1900. Execution was issued thereon, and returned nulla bona. Thereupon the plaintiff filed a petition in the Circuit Court, reciting the judgment, the return of the execution, and praying that a writ of mandamus issue to the proper officers of the city to levy a tax sufficient to pay the judgment. The city answered, in substance, that its power of taxation for all purposes was limited by law to the rate of 75 cents upon each $100 of the valuation of the city, and that taxes for the current year to that amount had been already levied and collected, and had been expended in defraying the ordinary current expenses of the city. The Circuit Court, however, was of the opinion that the limitation upon the power of taxation by the city related only to the ordinary purposes of the city, and did not prevent the levying of a special tax to pay a judgment rendered against it, and by mandamus ordered a special levy of taxes sufficient to meet the relator's judgment. The city brought the order of the Circuit Court here for review. This court, being of opinion that, under the laws of Tennessee applicable to the subject, the city of Cleveland was limited in respect of its power to levy taxes to the amount of 75 cents on $100 of its valuation, reversed the order of the Circuit Court, and remanded the case, with certain special directions. 111 Fed. 341, 49 C. C. A. 383. Those special directions were as follows:

"(1) That the defendant below be required to pay over the sum of $402.20, which the answer shows was levied and collected in 1895 for the specific purpose of complying with this contract, and which has been since held as a water and light fund.

"(2) That the defendant below be required to diligently proceed to the collection of any uncollected tax so assessed in 1895 for water and lighting purposes, and to pay over such taxes as collected upon the judgment of relator.

"(3) That the defendant below be directed to pay over any surplus which may remain from the proceeds of the total levy made for all purposes in 1900, after defraying the current expenses chargeable upon the ordinary revenue of the city, and that it make a further return, showing the amount of the tax collected and how same has been applied.

"(4) That the defendant below be commanded to levy for each year succeeding the entry of this judgment the full tax of seventy-five cents on the one hundred dollars of assessable city property, and the full poll and privilege taxes permitted by the charter of 1893, until the judgment of relator, with interest and costs, shall be fully paid, and after defraying all ordinary expenses payable out of the revenue so raised each year it will pay over to the relator any surplus remaining each year until his judgment shall be paid, and that it make all such other returns as shall be required by the court below, showing how it has obeyed this judgment."

Upon reception of the mandate a judgment in accordance therewith was entered in the Circuit Court. The defendant paid over the $402.20, then in its treasury, as required by the first paragraph of the order. And, upon being notified to fulfill the other requirements of the order, the city, by its recorder, on March 3, 1902, made a statement purporting to be a return to the third paragraph thereof. This return was of a general character, and did not give detailed information. Upon objection to it, it was conceded to be insufficient, and on March 31, 1902, the city recorder made another return, which covered the years 1900, 1901, and 1902 to the date of the return. Upon objections to this return, apparently because it was made by the recorder and not by the mayor and aldermen, and because of its insufficiency, the mayor and aldermen, on May 17, 1902, filed their return in respect to the same years. The relator filed exceptions to this return, and on the hearing thereof the court ordered the mayor and aldermen to make a further return, and particularly to give information in regard to several matters specified in the order. Then, on May 31, 1902, the mayor and aldermen filed a further and amended return. At this time there was pending a motion of the relator for an attachment of the mayor and aldermen for contempt in failing to obey the order directed by this court. At that stage of the proceedings the Circuit Court, on June 7, 1902, made an order of the tenor following:

"This cause came on to be heard on motion of plaintiff for contempt and his exceptions to the reports filed by defendants, and the court being of opinion that it is necessary for a proper determination of the questions involved that this cause be referred to a special master to hear proof and report on the following questions."

The questions mentioned were fully stated in the order, but it may be said, in brief, that they related with particularity to all the levies and collections of all taxes for the years 1900, 1901, and 1902, the purposes thereof, and the disbursements of the city for the same period and for what purposes. The special master appointed was directed "to hear proof, and to take and state the account and make the report as herein ordered." On October 4th following the special master

made a report upon the matters referred to him. This report was quite full and elaborate. It is not necessary to state all its details; but there are some features of it which require attention, as they are material to the proper disposition of the matters before us. It appears that in executing the reference the master took no testimony —that is to say, no witnesses were sworn—but the master employed an expert accountant, and, with his help, the master examined the records and papers of the city; from all which the master found that the city had levied taxes to the limit of 75 cents on $100; that of its disbursements many were not properly to be regarded as legitimate current expenses, enumerating the items so improperly disbursed, and finding as the result of his statement of the account showing the amounts collected and the amounts which he found to have been properly disbursed that "there should be" in the treasury of the city, and properly applicable to the payment of the relator's judgment at the date of the report, the sum of $5,631.19. By direction of the court the master made a further report, which related to some incidents of the reference, but not affecting the substance of the former report. Many exceptions to these reports were filed in behalf of the mayor and aldermen, some of which might be regarded as founded on objections which had been waived. But, in view of what we regard as more fundamental questions, it is not worth while to consider them. The court, on January 24, 1903, overruled the respondents' exceptions, and entered the following order:

"This cause came on this day to be heard on the original and supplemental reports of Henry O. Ewing, special master, and the exceptions of the defendants thereto, which reports are in the words and figures following, to wit: [Copying the reports.] And upon consideration the court is of opinion that none of said exceptions are well taken, and they are each and all overruled and disallowed, and the said reports of the master are confirmed. It is therefore ordered, adjudged, and decreed that defendants shall within twenty days from this date pay into the court the sum of $5,631.19 for the purpose of paying judgment of petitioner against defendant city of Cleveland, as shown by the report aforesaid, or they will stand in contempt of this court. It is further ordered that petitioner recover of defendants the cost of this reference."

To all which the respondents excepted.

There is much diversity in the practice in mandamus proceedings in the courts of the several states, owing, no doubt, in large measure, to the obliteration of distinctions in pleading and practice by the adoption of codes governing those subjects. In the Circuit Courts of the United States this writ is not allowed as original process, but is employed only in aid of jurisdiction already acquired, and is a species of execution for enforcing the judgment in the principal case. Rosenbaum v. Bauer, 120 U. S. 450, 7 Sup. Ct. 633, 30 L. Ed. 743; Smith v. Bourbon County, 127 U. S. 105, 8 Sup. Ct. 1043, 32 L. Ed. 73. Being of a strictly legal nature, final orders made thereon are reviewable only by writ of error. Ward v. Gregory, 7 Pet. 633, 8 L. Ed. 810; United States v. Addison, 22 How. 174, 16 L. Ed. 304; Muhlenberg County v. Dyer, 65 Fed. 634, 13 C. C. A. 64. The practice therein conforms in general to the practice in common-law actions. If it were otherwise, and it were permissible to pursue the practice of equity, we should have the incongruous result that the appellate court would, on a writ of error, review proceedings conducted

upon the system of equity. In fact, as already indicated, the conclusion that a writ of error and not an appeal is the proper appellate remedy rests upon the assumption that mandamus is in the nature of a common-law proceeding. For this reason we are disposed to think it was altogether irregular to make a reference to the master to report the facts and law involved on the hearing of the petition. The master's office and functions are concerned only with the equity side of the court, and it would seem to follow that the judge sitting in the law side could no more order a reference to him than to a stranger. But here the court not only made the order referring it, but throughout treated the reference in all respects like a reference in equity. Exceptions to the master's findings of fact and law were entertained and were overruled, and the master's findings were made the basis of the order of the court. How are we to deal with questions arising in such procedure on a writ of error?

Then, as to the proceedings of the master, assuming we might review them: He reported no evidence, but only his own personal examinations and conclusions, aided by an accountant. There was nothing to which exceptions to his findings of fact could attach. Nor is there any bill of exceptions. Evidently it was not intended to create a reference which should constitute the master an arbitrator whose determinations of law and fact should be final. The recital in the order above quoted negatives such an inference. Nor did the parties assent to a reference of that character. And it is clear from what followed that the reference was intended to be such a reference as is familiar in the practice of courts of equity. In 'executing the directions contained in the mandate of this court, the Circuit Court was not limited to any specific mode of procedure, but might adopt such method as, while conforming to the general principles of pleading and practice, should be found best calculated to effect its purpose. If the return of the mayor and aldermen was not deemed sufficient, we see no reason why its sufficiency might not be challenged by exceptions on the part of the relator; and if the exceptions were held valid the court might order a further return, and in this way compel the production of such facts as would enable the court to determine whether the mayor and aldermen were, in good faith, conforming to the order of the court, and thereupon make a final judgment, and coerce the performance of the duty of the city if necessary. The court has ample means for compelling obedience to its orders in that direction. But we think the better course of procedure would be to follow the analogies of the practice upon the original return, and that would have been for the relator to have demurred to the return of the mayor and aldermen if it was deemed insufficient in law to constitute a defense, or to have joined issue upon it if it was regarded as untrue in respect of its allegations of fact. High on Extraordinary Legal Remedies, §§ 492, 494, 496.

In the present condition of the record we do not deem it advisable to discuss the questions presented by the return of the city. No determination thereon has as yet been made by the Circuit Court in such form as to justify our review of them, and in the result of the further proceedings to be had in the case they may not recur.

We think that the order of reference to the master of June 7, 1902, the confirmation of his report, and the final order of the Circuit Court of January 24, 1903, should be reversed, and the cause remanded, with instructions to permit a further return by the mayor and aldermen if they shall elect to make one, and in that case to require the relator to except or plead thereto, or, if the mayor and aldermen should not so elect, then to require the relator to plead to the return of the city already made, or stand upon his exceptions already made, or such other exceptions as he may be permitted by the court to make, and thereupon to proceed in due course and in conformity with this opinion.

It is so ordered.