CUNNINGHAM v. CITY OF CLEVELAND, TENN., et al.

(Circuit Court of Appeals, Sixth Circuit. March 24, 1907.)

No. 1,586.

1. MUNICIPAL CORPORATIONS—JUDGMENT AGAINST CORPORATION—MISAPPLICATION OF REVENUE.

Where a city is given by statute authority to borrow money for the erection of public buildings and to issue its bonds therefor, it has not the right to use its current revenues for that purpose as against a judgment creditor, whose judgment is payable only from the surplus of such revenues above current expenses.

[Ed. Note.—Constitutional and statutory limitations of municipal indebtedness, see note to City of Helena v. Mills, 36 C. C. A. 6.]

2. SAME—ENFORCEMENT OF JUDGMENT—MANDAMUS.

A writ of mandamus requiring a city to levy taxes for municipal purposes to the full amount permitted by statute, and to apply the surplus remaining after paying current expenses chargeable thereon in payment of a judgment against it, is continuous in its operation, and the court may modify its order from time to time to meet the exigencies of the case. It may bring in as parties officers elected after its order was made, and, while it cannot control their discretion if honestly exercised, it may exercise a supervisory power over their acts so far as necessary to insure an observance of its mandate in good faith.

In Error to the Circuit Court of the United States for the Eastern District of Tennessee.

Frank Spurlock, for plaintiff in error.

J. B. Sizer, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. This cause is now here for the fourth time. On the first occasion, it was brought up on an appeal by the complainant from a decree of the Circuit Court dismissing the bill. The decree was reversed, with directions to enter a decree for the

complainant for the full amount claimed by the bill, with interest and costs. The decision of this court was of the date of December 9, 1899. The facts of the case and the opinion of the court were reported in 98 Fed. 657, 39 C. C. A. 211. Pursuant to the mandate, on April 11, 1900, a decree was entered in the Circuit Court in favor of the complainant for the sum of $9,852.12 and costs. Execution was issued thereon and returned nulla bona. On July 11, 1900, the complainant filed a petition in the Circuit Court praying for a mandamus to compel the city to levy and collect a sufficient tax and therewith to satisfy the decree. To an alternative writ the city returned that it had already assessed a tax for that year of 75 cents on each $100 for the maintenance of its municipal functions, that this assessment was the limit of its power of taxation under its charter, and that no surplus would remain after applying the amount assessed to the necessities of the city government. The complainant demurred to this return, and the demurrer was sustained; the court being of opinion that the city had the power, and it was its duty, to levy a special tax, notwithstanding the limitation of 75 cents on the $100, which the court thought was a limitation upon its power to tax for ordinary municipal purposes. The court was further of opinion that the return was insufficient in that it failed to state the purposes for which the general tax had been levied. A judgment was entered in accordance with this opinion, and the defendant sued out a writ of error to this court. It was here held upon consideration of the relevant provisions of the city's charter that the Circuit Court was in error in holding that the aforesaid limitation did not exclude the power to levy a special tax to satisfy the decree; and we reversed the judgment. But on doing this we indicated to the Circuit Court our opinion in respect to the judgment which that court should enter. The case, as then presented, and the opinion of this court, are reported in 111 Fed. 341, 49 C. C. A. 383. As the judgment which we then indicated as the proper one was made the judgment of the Circuit Court upon the reception of the mandate, and was, and still continues to be, the guide for subsequent proceedings, we here set forth a copy of so much thereof as is now material:

"That the defendant below be directed to pay over any surplus which may remain from the proceeds of the total levy made for all purposes in 1900, after defraying the current expenses chargeable upon the ordinary revenue of the city, and that it make a further return showing the amount of the tax so collected, and how same has been applied. That the defendants below be commanded to levy for each year succeeding the entry of this judgment the full tax of 75 cents on the $100 of assessable city property, and the full poll and privilege taxes permitted by the charter of 1893, until the judgment of relator, with interest and costs, shall be fully paid; and, after defraying all ordinary expenses payable out of the revenue so raised each year, it will pay over to the relator any surplus remaining each year, until his judgment shall be paid, and that it make all such other returns as shall be required by the court below, showing how it has obeyed this judgment."

After the Circuit Court had entered the judgment we directed, the city made a further return as therein required, and evidence relating to the matters stated in said return was taken before a master as in equity proceedings; but the relator had taken no issues either of fact or law

upon the return. The master did not report the evidence, but stated his own conclusions of the state of the city's finances, reached by him with the assistance of an accountant. Upon his report of the sum which ought to be in the treasury for the satisfaction of the decree exceptions were filed, which being overruled the court ordered that the defendant pay into court within 20 days the sum of $5,631.19 to be applied upon the decree. Upon a writ of error, because no issues had been made and for other irregularities, in consequence of which we were unable to review the proceedings to any purpose, the order was reversed and the cause remanded, with instructions to permit a further return, to require the relator to demur or plead, or take exception thereto as he might elect, and to take further proceedings in conformity with the opinion which we filed. The report of the case on that writ of error is to be found in 127 Fed. 667, 62 C. C. A. 393. These directions being entered in the Circuit Court, the city made a further return showing the revenues it had collected and the disbursements it had made for the years 1900, 1901, 1902, and 1903, respectively, and the parties pleaded to issue thereon, and the relator also filed exceptions to the return. The case was finally submitted upon the return, the exceptions thereto, and certain agreed facts. The court overruled all the exceptions, and adjudged the return to be sufficient, and that the relator pay the costs of the proceeding. The case is now here upon a writ of error to reverse that judgment.

We take the facts as we gather them from the return of the city and the agreed statements. The return for the year 1900 shows that taxes to the amount of 75 cents on the $100 of the valuation were collected. It also shows that the whole amount thus collected was disbursed, but that no part was applied to the relator's decree. The exceptions of the relator to the disbursements of that year challenge the following items: An item of $250 paid to attorneys for services rendered in 1899. It does not appear at what time in 1900 this item was paid; nor is it important, as we think, to fix the precise date. The petition for mandamus, filed in July of that year, did not seek to impound the general taxes for 1900, or any part of them. It was filed for the purpose of compelling a special levy to satisfy the decree, and that was what the Circuit Court ordered. Until the date of the judgment of this court, which was October 8, 1901, there was no order or judgment which interfered with the power of the city to pay any valid obligation. The order then made could only apply, so far as the revenues of that year were concerned, to any surplus arising from the collections of that year which still remained in the treasury. The same observations apply to the second exception, which is to the disbursement in that year of $843.70 to pay a note given for a rock-crusher, and to the third exception, to the payment of $533.40 due on a judgment against the city for attorney fees. It is not charged that any of these three items were not valid obligations of the city.

The return for 1901 shows that taxes to the full amount of 75 cents on the $100 were collected, that they were all disbursed, but none to the relator. Among the disbursements was an item of $2,125 for the purpose of building an addition to a public school building, and this disbursement formed the subject of the relator's fourth exception.

The date in 1901 when this item was disbursed, as is the case with all the items of disbursements in this and the previous year, is not shown. If it was paid before October 8, 1901, it was not within the scope of the judgment of this court of that date, and for the reason above stated in regard to previous exceptions no order of the court was pending which forbade the disbursement, and the city or its officials would not be in contempt for making it. The burden was on the relator to prove that it was after that date in order to bring the respondent under the operation of the order. We are not to be understood as saying that the particular disbursements above mentioned and now challenged by the relator were made with due regard to his rights. We only say that upon this writ and the order thereon directed by this court in October, 1901, the court was restricted to the limits of the writ and order. We make these observations respecting the disbursements challenged with a qualification which we propose to consider here, though it relates as well to the exception following, which has regard to another disbursement of $2,548.85 made during the year 1902 for another addition to the school building. We preface what we are now to say with the statement that in 1902 the full amount of 75 cents on $100 was levied and collected and disbursed without any relief to the relator. And so of 1903. Counsel for the relator contends that these appropriations for additions to the school building were not justified as against him for the reason that section 21 of the charter authorized the city to borrow money and issue its bonds therefor to erect public buildings, and that it was its duty to avail itself of that power, if it had not enough to pay its other obligations falling due. We are strongly inclined to think this point is well taken. It seems probable that the Legislature contemplated just such a situation as this as likely to happen. The building of such large structures would necessarily involve the use of large sums of money, several times larger than the municipality was authorized to raise for its current annual expenses, which for those purposes were meager enough already. It is true it was a grant of authority, and it may be said that a discretion existed. But, if the city owed an honest debt which it could not otherwise pay, it would seem to be due to the owner of that debt that the discretion should be exercised in his favor. Supervisors v. United States, 4 Wall. 435, 18 L. Ed. 419; City of Galena v. Amy, 5 Wall. 705, 18 L. Ed. 560; Deere v. Commissioners, infra. During the years 1901 and 1902, the city disbursed for these new buildings $4,673 out of funds which were raised for ordinary expenses, and therefore applicable to the debt due the relator, if not necessary for current use. We think he had a lawful right to expect this, and that if, after paying its ordinary expenses, it should have no funds to erect school buildings, the city should exercise its power under the statute providing for raising funds for that purpose, if, indeed, there was a real necessity. It was not a case where the city would have to appropriate its ordinary revenues to erect school buildings or go without. No such necessity could be appealed to in order to justify the city in withholding from the relator the debt due him and defeating his just expectation that the city would in good faith exercise its powers in such a way as to pay him. When we speak of the city, we mean to include the

officials who, from time to time, represented it in the levying and collecting its taxes and appropriating its revenues.

We are therefore of opinion that the Circuit Court erred in holding that the return was sufficient, and specifically in regard to the disbursement of $2,548.85 for school buildings in 1902, and in so far its judgment should be reversed, with directions to adjudge the return insufficient in the regard mentioned. And it is authorized, if it shall be so advised, to order a more specific return as to the time when the disbursement of the $2,125 for school buildings was made in 1901, and, if it shall appear that it was made after the 8th day of October of that year, the said return in that respect should be judged insufficient. The costs of the proceeding were erroneously adjudged to be paid by relator. The relator was entitled to a return to the writ. The circumstances justified him in pursuing his remedy, and, as above indicated, we think the court erred in holding the return sufficient, and that the relator should have been awarded costs.

The return made for the year 1903 shows that the full 75 cents on each $100 was levied and collected and disbursed by the city, and that nothing has been paid to the relator. It also shows that there was a "cash balance in the hands of the city treasurer for 1903" of $722.61. Nothing is said about this in the judgment of the court below; and, from the fact that no error is assigned because the court did not order it to be paid over, we do not concern ourselves with it. There is no assignment of error in dealing with the return for 1903, except as it may be indirectly involved in the assignments presently to be noticed. Apparently that surplus would be paid to the relator.

The other assignments of error seem to be intended to raise two questions of an interesting character, of which one is whether the act of the Legislature of Tennessee of 1895 which transfers the duty of valuing the property of the city for assessing taxes from the recorder of the city to the county assessor, who makes, under that act, a single valuation for state, county, and municipal purposes, impaired the obligation of the city in respect of his contract, which was of earlier date. Under the then existing law the recorder valued the property in the city only, and he was by the statute required to value it at its true cash value. This the relator was entitled to have done, and he might probably have compelled the recorder to make such a valuation. In Deere v. Board of County Com'rs (C. C.) 33 Fed. 823, it was held by Mr. Justice Brewer, then Circuit Judge, that, where at the date of the obligation the commissioners were authorized in their discretion to levy a poll tax to meet the obligations of the county, a mandamus might properly be issued to compel them to do so, notwithstanding their authority to levy poll taxes had since been taken away by a law of the state; the case being one where a judgment creditor could not be satisfied by other methods of taxation. By the act of 1895 the valuation is to be made by an officer who is not an officer of the city, but one who, when he values property, values it not only for city purposes, but for those of the state and county, and he could not be compelled to make a valuation for the former without also doing it for the latter. In normal circumstances the mere transfer of such a duty from one officer to another would not impair any contract obliga-

tion. But here the difficulty, as pointed out by the relator, is that the county assessor values property, and has been during recent years valuing the property in this city, at only 70 per cent. of its true cash value. The result is that 30 per cent. of value cannot be taxed for city purposes at all. Nor has he any available remedy as he would have if the recorder of the city were charged with the duty. A valuation of the latter would be made for city purposes only, and compulsory process would be adapted to its proper purpose. But a valuation by the county assessor of the property in the city could not be made by him at its true cash value without drawing upon it an unequal burden of state and county taxes, unequal as respects the state taxes with all other property in the state, and as regards the county taxes with the other property in the county. Apparently the result would be to effect an inequality of taxation which is forbidden by the Constitution of the state and affect the legality of taxation elsewhere. See Taylor v. Louisville & N. R. Co., 88 Fed. 537, 31 C. C. A. 537. But we are prevented from expressing a definite opinion upon the question thus presented by the fact that there is no adequate foundation laid in pleading and procedure for invoking the judgment of the court upon it.

The other question is whether the court might compel the city to make a distinct levy of 75 cents on each $100 of the 30 per cent. of valuation which has not been taxed, and apply this to the payment of the judgment. But here we have the same difficulty. The conditions required for awarding this special relief are not found in anything which the relator has done or asked in the requisite legal form of procedure.

The judgment of the court below will be reversed, with costs, and the cause remanded with directions to enter a judgment for the relator as indicated in the foregoing opinion.

We have thought it necessary to review the order of the Circuit Court which adjudged the return sufficient, and to reverse the same to the extent that we hold the order erroneous, lest the order might conclude the relator in any subsequent proceeding he might be advised to take against the board or the individuals composing the same for a breach of duty in respect of the levying and appropriation of taxes which should have been applied to the payment of his debt. In saying this, however, we are not to be understood as expressing any opinion as to whether such a remedy is open to the relator or not.

When, on October 8, 1901, we directed the order hereinbefore in part recited, we assumed that the board of mayor and aldermen of the city, its duties being defined, would in good faith proceed to exercise its legitimate powers so as to provide for the payment of the relator's judgment. It is now complained that it has acted in bad faith, and has industriously so shaped its conduct as to exclude the relator from the relief due to him. We do not need to express an opinion upon that subject. There is, however, an aspect of the case which we should not ignore. The court below expressed the opinion that whatever the fault of the board in respect of the appropriation of the taxes levied in previous years, inasmuch as those taxes had been already disbursed and could not now be reached, and the membership of the board had been changed so that other persons now composed it, the court was

without power to remedy the mischief. And counsel for the defendant lays stress upon these conditions and urges the impossibility of the relator's obtaining any relief for former conduct of the board, as matters now stand. It cannot be denied that there is much force in these objections. The court may not order what is impossible, and it should not visit upon an innocent party the consequences of another's fault. But the writ is of continuous operation and the order of the court is subject to such amendments as the exigencies of the case may from time to time require. It may bring in new parties, and it may reform its requirements so long as the substantial object of the proceeding remains the same and is not yet accomplished. And, in view of subsequent events, we think the court below, if it should be so moved, should, and it is permitted to, amend the order directed by this court in October, 1901, so as to bring in said board as a respondent in this proceeding, and to require the said board in each year to seasonably estimate what sums are required for the ordinary expenses of the city for that year, and for what particular expenses and in what amounts such sums are required, and what sum it proposes to levy for the payment of the relator's judgment; and forthwith, upon the making such determinations, make report to the Circuit Court in which this cause is pending, stating fully and particularly the several sums and for what several purposes it has determ'ned to levy and collect taxes during that year, and in such form, and to the end, that the court may fully understand whether its mandate is being observed; and the Circuit Court is directed, as soon as practicable after receiving such report, to review the same and ascertain whether its order is being obeyed, and, if it shall be of opinion that it is not, and that the conduct of the board is not taken in good faith toward the relator, then to make such specific order and direction as shall require the said board to so modify its previous determination as to conform to the determination of the court. So long as the board acts lawfully and in good faith, its discretion cannot be supervised by the court. But it cannot, under the guise of its discretion, be permitted to accomplish an unlawful purpose. And the court below is directed to give notice to said board of the amendment of the former order directed by this court, in case such amendment shall be made, and of the further requirements herein directed, which notice the said board will file for its information in each subsequent year. It is proper to say that, in the foregoing direction in regard to making the board a respondent in the process, it is not to be inferred that we think it is not so already in legal contemplation. Our purpose is to relieve any doubt which the board might entertain in regard to its relation to the proceeding.

Order reversed, with directions as herein indicated.