CITY OF CLEVELAND, TENN., et al. v. UNITED STATES et al.

(Circuit Court of Appeals, Sixth Circuit.    January 22, 1909.)

No. 1,820.

1. CONSTITUTIONAL LAW (§ 169*) — STATUTES IMPAIRING OBLIGATION OF CONTRACTS—IMPAIRMENT OF REMEDY.

The impairment of the obligation of a contract by a state, which is forbidden by the Constitution of the United States, is not limited to cases where the statute destroys the remedy for enforcement of the contract and provides no other, but includes all cases where the substitution of a different remedy is of one in substance more difficult, more burdensome and uncertain than the one repealed, and which appreciably lessens the value of the contract.

[Ed. Note.— For other cases, see Constitutional Law, Cent. Dig. § 474; Dec. Dig. § 169.*]

2. CONSTITUTIONAL LAW (§ 168*) — STATUTE IMPAIRING OBLIGATION OF CONTRACT—IMPAIRMENT OF REMEDY.

Relator recovered a judgment against the defendant city based on a contract payable from current taxes. At the time when the contract was made such taxes which might be levied were limited by the city's charter, and the property taxable was required to be assessed by the city recorder at its full value. Subsequently a state statute, Acts Tenn. 1895, p. 203, c. 120, required all assessments to be made by a county assessor, whose assessments are reviewed, first by the county board, and next by the state board of equalization; and this assessment is to be copied by the city recorder for city purposes. Held that, as against relator, such statute was void as impairing the obligation of his contract by depriving him of a remedy against the recorder to compel an assessment of property at its true value; that it therefore did not repeal the provision of the charter for assessment by the recorder, and that he could be compelled by mandamus to reassess property for previous years which had been assessed by the county assessor at less than its value, and to levy and collect taxes on the valuation omitted, to be applied on relator's judgment.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 475; Dec. Dig. § 168.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3. MANDAMUS (§ 116*)—LEVY OF TAXES—ENFORCEMENT OF JUDGMENT.**

Where a city was given by statute authority to borrow money for the erection of public buildings and to issue its bonds therefor and levy a special tax for their payment, it had not the right to use its current revenues for the erection of such buildings as against a judgment creditor whose judgment is payable only from the surplus of such revenues above current expenses; and, where it has so diverted current revenues, the judgment creditor is entitled to be substituted to the right which a bondholder would have had, and to compel the levy of a special tax to replace the money so diverted.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 243; Dec. Dig. § 116.*]

**4. MANDAMUS (§ 176*)—SCOPE OF RELIEF.**

In granting a writ of mandamus to compel the levy of a tax by a municipal corporation to pay a judgment, the court may, in the exercise of broad equity powers, direct the distribution of the tax over a number of years, where it would otherwise impose a hardship on taxpayers.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 394; Dec. Dig. § 176.*

To enforce payment of judgment against municipality, see note to Holt County v. National Life Ins. Co., 25 C. C. A. 475.]

In Error to the Circuit Court of the United States for the Eastern District of Tennessee.

J. B. Sizer, for plaintiffs in error.
F. R. Spurlock, for defendants in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. For the fifth time, the litigation in this case is brought before us for review. The previous decisions of this court are reported in 98 Fed. 657, 39 C. C. A. 211, 111 Fed. 341, 49 C. C. A. 383, 127 Fed. 667, 62 C. C. A. 393, and 152 Fed. 907, 82 C. C. A. 55. The rights of the parties were settled on the first appeal (98 Fed. 657, 39 C. C. A. 211) when, reversing the decree of the court below, we directed a decree for the complainant in the sum of $9,852.-12 and costs. This was in 1899. Since that time the complainant has been vainly endeavoring to collect his judgment; and the defendant, the city of Cleveland, has persistently interposed all conceivable defenses to defeat it. The history of the proceedings is exhibited in the reports of the former decisions of this court above referred to. For the present purpose it is only necessary to say that on the rendition of the final judgment directed by this court and some time in the year 1900, an execution was issued and returned nulla bona. Thereupon a writ of mandamus was sued out to compel the levying of a special tax to pay the judgment. This was resisted upon the ground that the city was so limited by its charter that it had no power to levy taxes beyond the amount of 75 cents on each $100 of its valuation, and this had all been required for current expenses. The Circuit Court overruled this defense, holding that the limitation referred to did not include taxes to meet obligations such as that of the complainant; and a peremptory order to make the levy was made. To review this order the city brought a writ of error, and, for the reason that we thought

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the lower court was in error in thinking that the limitation in the charter did not include taxation to meet such an obligation as this, we reversed the order and gave certain specific instructions to the court below, found at 111 Fed. 349, 49 C. C. A. 383, which we deemed sufficient for the intended purpose. But they have not proved so. The case was brought here again, but we were obliged to reverse the order then in question on account of certain faults in the procedure which were insuperable; and the cause was sent back for further proceedings, with instructions, among which was one to require a further return and pleadings thereon which seemed necessary, in order to determine whether the officials of the city were complying with the order directed in October, 1901, 111 Fed. 341, 49 C. C. A. 383. Further proceedings were had. The further return showed that in several particulars the rights of the complainant had been disregarded, but that in some of them, not all, the results were past remedy upon the pleadings as they were originally framed, and the further fact that the officials who had participated in the wrongful acts were no longer in office and the diverted funds were past recall. The court below had held, however, that the return was sufficient because it showed that for the years 1900, 1901, 1902, and 1903 taxes to the limit allowed by the charter had been collected and disbursed for current expenses, and overruled all the exceptions taken by the relator to the return, and further ordered the relator to pay the costs of the proceedings. We reversed this order, and because it then appeared in the record that a part of the taxes raised in previous years had been diverted to the building of a schoolhouse, which the city might have built with moneys which it was empowered to raise by a special provision in its charter, and because, also, it appeared that under the provisions of an act of the Legislature of Tennessee repealing the provision in the charter of the city relating to taxation and the substitution of a new method under which the county assessor made the valuation for the county which the city copied, and the assessor had been valuing the property in the city and elsewhere at no more than 70 per cent. of its actual value, we directed an amendment which would open up those subjects, so that justice might be done in those regards. This has now been done. The particulars have been ascertained, and upon a further hearing the court below has made an order, the provisions of which are challenged by the defendant. This brings us to the consideration of the case in its present aspects.

The principal matter in controversy is that part of the order of the court below which directs the recorder of the city to make an assessment of the property therein for the years 1902, 1903, 1904, and 1905, respectively, at its full and true value, and to deduct from each description thereof the amount at which it was assessed by the county assessor, and, upon the difference found, to assess and collect 75 cents for each $100 thereof, to the end that it be applied to the satisfaction of the complainants' judgment. We have stated the substance. No fault in the particular details is complained of.

This mandate to the recorder is grounded upon the following facts: By the provisions of the charter of the city at the time when the complainant's contract with it was made, the recorder of the city was in-

trusted with the duty of assessing for taxation all property in the city, and with the authority for collecting all taxes levied thereon, and no other person or officer shared in either of these duties. He was entirely independent of state and county officers, and of any rules which they might prescribe for their own conduct. The provision was this:

"He [the recorder] shall render, semi-annually each year, and as often as the board may require, a full and complete statement of the finances of said corporation; and he shall assess and collect the taxes for said corporation, and, within thirty days from the time of assessing said taxes, deliver to the city a tax list, which shall be the authority of the city for collecting the taxes of said city; and he shall preserve a copy of said tax lists with the papers of said corporation."

By the Constitution and laws of the state, he was required to assess the property at its actual value, and the plaintiff by virtue of his contract became entitled to claim the exercise of those powers and duties of the city's official who was intrusted with them.

Subsequently, the Legislature of Tennessee passed during the same year, 1895, an act providing for the assessment and collection of all taxes throughout the state. Acts 1895, p. 203, c. 120. It was thereby enacted that assessments for state, county, and municipal purposes should be made by the county assessor, and it was expressly declared by section 57 thereof that "no municipality or taxing district shall assess any property for taxation, but shall copy the assessment made by the assessor herein provided for, so far as the same may be necessary for such municipality or taxing district." By the scheme of this law the county assessor's assessment was made subject to review by the county board of assessors, and its decision should be final unless it should be altered by the state board, and, further on, by the State Board of Equalization, whose decision "shall be final." It is contended for the plaintiff that this repeal and substitution of the method of assessment and collection of taxes in the city of Cleveland impairs the obligation of his contract, and is obnoxious to the provision of the Constitution of the United States in that regard. Counsel for the city state the question as one of a twofold character, as follows:

"It is manifest that, to sustain the order of the Circuit Court now under consideration, these two propositions must be established: First, that the change in the law whereby the power of assessing property for taxation was taken from the municipal authorities and vested in the county assessor in some way impaired the efficiency of the remedy which was available for the enforcement of the contract at the time it was made; and, second, that because the change impairs the efficiency of the remedy, therefore the court can disregard it, and can still require the city officials to exercise the power they had when the contract was made, notwithstanding the law has since withdrawn it."

This is a misconception. There is but a single question, and that is stated in counsel's first proposition, for, if the later statute impairs the plaintiff's remedy, it is therefore void, and did not repeal the statute which committed this duty to the city recorder. That duty continued to be attached to his office as if the repealing statute had never been passed.

Under the former law, the plaintiff's remedy, if his judgment was not paid, was by a direct and simple order against the city's own offi-

cer. It was in no wise hampered or impeded by any external relations of the city with the county or state, or by any relation of its officer with those of the county or state, of subordination or otherwise. But what is the plaintiff's remedy under the later act?. Counsel for the city answer this question first by suggesting that the county assessor is required by law to assess property at its true cash value, and the plaintiff may repose upon the presumption that he will comply with the law; and, further, that, if the assessor does not do this, the plaintiff may bring the matter before the county board, and if he does not get relief there, he may carry his grievance to the State Board of Equalization, a board whose decision is made final; or, second, he might sue the county assessor on his official bond, and he might prosecute him in the criminal courts. This suggestion that the party may rely upon the presumption that the officers concerned with the assessment and collection of the necessary taxes is not new, and has been answered in previous cases. Seibert v. Lewis, 122 U. S. 284, 7 Sup. Ct. 1190, 30 L. Ed. 1161, is one. The real question is, what, if they do not, is the plaintiff's remedy for enforcing it? "For," says Blackstone, "in vain would rights be declared, in vain directed to be observed, if there were no method of recovering and asserting those rights when wrongfully withheld or invaded." 1 Com. 55. The party's right to have his judgment satisfied is not to be left to the caprice or possible disregard of the law by the tax assessor, as, for instance, by assessing property at 70 per cent. of its cash value when the law commands it shall be assessed at its full value. Then, as to the remedy on the assessor's bond. To begin with, this is not such a remedy as can be regarded as the equivalent of direct proceedings for the collection of the debt, and is a mere consequence of the plaintiff's inability to collect the judgment from the party owing it. It would seem a travesty if the law could be converted into an agency whereby the defendant should escape its obligation and the county assessor or some assessing board should be compelled to satisfy it. The suggestion of a criminal prosecution as a remedy for enforcing the judgment cannot, of course, be taken seriously.

It has occurred to us that we should consider whether or not the plaintiff would have any remedy which the court where the judgment rests, or another federal court in another district, could enforce. The assessor for the county of Bradley is not an officer of the city of Cleveland, but of another municipality. If it be assumed that the court below would have jurisdiction to entertain a proceeding by mandamus against the assessor of the county to compel him to assess the property in Cleveland at its true value, still he could not be compelled to do that without also increasing his other valuations in other parts of the county, and, if the valuations in other counties are the same as his own, it would be impossible for him to change his own without producing the disparity which the Constitution of the state forbids. The statute requires that a party aggrieved by the county assessor shall seek his relief, not in the courts, but by proceedings in the nature of an appeal to superior authorities, who could only be reached, at the last step, in another federal district, and then the matter would be so

complicated with taxation throughout the state that relief would be well-nigh, if not quite, impossible.

It seems obvious that none of these expedients would be "a prompt and efficacious remedy" such as that which the plaintiff would have under the law of his contract which the later statute displaces. The impairment which the Constitution of the United States forbids is not limited to cases where the statute destroys the remedy and provides no other, but includes all cases where the substitution of a different remedy is of one in substance more difficult, more burdensome or uncertain than that which is repealed; one which appreciably lessens the value of the contract; is less prompt and efficacious; or as otherwise variously expressed to signify a like meaning. But it is said by the Chief Justice, in Bronson v. Kinzie, 1 How. 311, 317, 11 L. Ed. 143:

"It is manifest that the obligation of the contract, and the rights of the parties under it, may, in effect, be destroyed by denying a remedy altogether, or, may be seriously impaired by burdening it with new conditions and restrictions, so as to make the remedy hardly worth pursuing."

The cases upon this subject are very numerous. We refer to some which are peculiarly applicable: Green v. Biddle, 8 Wheat. 1, 5 L. Ed. 547; Von Hoffman v. Quincy, 4 Wall. 535, 18 L. Ed. 403; Wolff v. New Orleans, 103 U. S. 366, 26 L. Ed. 395; Seibert v. Lewis, 122 U. S. 284, 7 Sup. Ct. 1190, 30 L. Ed. 1161; McGahey v. Virginia, 135 U. S. 662, 685, 10 Sup. Ct. 972, 34 L. Ed. 304; Barnitz v. Beverly, 163 U. S. 128, 16 Sup. Ct. 1042, 41 L. Ed. 93; Graham v. Folsom, 200 U. S. 248, 26 Sup. Ct. 245, 50 L. Ed. 464; Ex parte Young, 209 U. S. 123, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932.

In the opinion of this court in 1901 upon a writ of error taken by the city and reported in 111 Fed. 341, 49 C. C. A. 383, Judge Lurton, after referring to the charter of the city as amended in 1893, said, at page 343 of 111 Fed., page 385 of 49 C. C. A.:

"The subsequent amendments of that act are of no importance, since they do not enlarge the taxing powers of the corporation, and could not effectually deprive the relator of any remedy which he had under the law existing at the date of the contract. Seibert v. Lewis, 122 U. S. 284, 7 Sup. Ct. 1190, 30 L. Ed. 1161. Legislation which lessens the efficacy of the means for enforcing the obligation of a contract in existence when the obligation was incurred would conflict with the provision of the Constitution prohibiting the impairment of the obligation of contracts. Louisiana v. City of New Orleans, 102 U. S. 203, 26 L. Ed. 132; City of Memphis v. Bethel, 3 Shannon's Tenn. Cas. 205."

The office of the recorder of the city of Cleveland still continues, and the respondent Lea is the incumbent.

We think the act of 1895, if valid, lessens the value of the contract merged in the plaintiff's judgment, and therefore impairs it. The statutes of Tennessee contain ample authority for reassessing property and collecting taxes for former years when it has escaped assessment by being overlooked or undervalued. Bank v. Memphis, 107 Tenn. 72, 64 S. W. 13; Street R. R. Co. v. Morrow, 87 Tenn. 414, 11 S. W. 348, 2 L. R. A. 853; State ex rel. v. Whitworth, 8 Lea (Tenn.) 594; Railroad Company v. Morristown (Tenn. Ch. App.) 35 S. W. 773.

The objection to this mandate of the order in question is overruled.

In respect to that part of the order which requires "the repayment of the money expended for school building" in 1901 and 1902, it is contended for the city that "the order was improper, inasmuch as compliance with it was manifestly impossible." And the impossibility which the counsel suggests is that the revenues for those years have some time ago been expended, and so are not within the control of the respondents, the common council, and that this was done by their predecessors, and that the present board are not responsible therefor. But we think the order is in substance not erroneous, although we think some modification of it should be made, which we shall presently indicate.

When this case was last here (152 Fed. 907, 82 C. C. A. 55) it appeared that the city had expended a large part of the revenues of those years for building a schoolhouse, and that in consequence nothing was left for application to the plaintiff's judgment. Our attention was drawn to the provision of section 21 of the city's charter, whereby it was authorized to borrow money and issue its bonds therefor to erect public buildings, and we expressed the opinion that this school building which was erected at a cost of $4,673 was a "public building" within the meaning of that section of the charter. And, touching the propriety of using the current revenues of the city for such a purpose, we said, at page 910:

"It is true it was a grant of authority, and it may be said that a discretion existed. But if the city owed an honest debt which it could not otherwise pay, it would seem to be due to the owner of that debt that the discretion should be exercised in his favor. Supervisors v. United States, 4 Wall. 435, 18 L. Ed. 419; City of Galena v. Amy, 5 Wall. 705, 18 L. Ed. 560; Deere v. Commissioners (C. C.) 33 Fed. 823. During the years 1901 and 1902 the city disbursed for these new buildings $4,673 out of funds which were raised for ordinary expenses, and therefore applicable to the debt due the relator, if not necessary for current use. We think he had a lawful right to expect this, and that if, after paying its ordinary expenses, it should have no funds to erect school buildings, the city should exercise its power under the statute providing for raising funds for that purpose, if, indeed, there was a real necessity."

When a statute gives a power which the donee may exercise, its exercise may be compelled when the rights of parties require it. Supervisors v. United States ex rel., 4 Wall. 435, 18 L. Ed. 419; 20 Am. & Eng. Encl. of Law (2d Ed.) 239.

The plaintiff, by the course pursued, was prevented from realizing the sum thus expended, to which he was entitled, and which would have come to him but for this inequitable appropriation. If the city had borrowed this money, as it had the power to do, in order to pay for the building, it would have owed to the lender a debt for which he could have required the levy of a special tax to pay it, and we think a court of equity should regard the party whose money was wrongfully misapplied to the identical purpose as substituted to that extent, as standing upon, at least, an equal ground for demanding a special levy to refund the money thus diverted from him and devoted to the purpose for which a special tax might be levied. The order may be modified to conform to these views, and stand as affirmed. By the

perversity of the city the amount due to the plaintiff has come to amount to a comparatively large sum, and, if the whole sum were to be made upon a single levy, some hardship might befall many who have had no hand in the course pursued which has resulted in the accumulation of debt, interest, and the costs of litigation. In such circumstances the court has sometimes tempered the severity of the mandate by spreading the burden over a short number of years. Confessedly, the practice is not according to the legal rights of the parties, and it is only upon a very broad equity that it can be sanctioned. But we are willing to follow the example, and, while affirming this part of the order as modified to conform to the opinion above expressed, we will reserve to the court below the right and power to distribute the burden of the obligation over a period not exceeding five successive years, in the court's discretion.

Respecting that part of the order complained of which relates to disbursements made in 1904, 1905, and 1906 in the maintenance of the fire department of the city, which the court disallowed, and the amount of which was ordered to be paid to the relator, we think the court erred. They were in their character current expenses for a public necessity. There was no proof adduced to show that the amounts expended were unreasonable or improper or in any wise fraudulent toward the plaintiff. In these circumstances, these expenses could not have been forborne in order to pay an antecedent debt. This point was so ruled on a former occasion when this case was before us. The decision is reported in 111 Fed. 341, 49 C. C. A. 383, and was confirmed in Village of Kent v. United States, 113 Fed. 232, 51 C. C. A. 189. This part of the order must be reversed.

Neither party will recover costs.