# THE STATE ex rel. McCLEARY v. ADCOCK et al., Constituting State Board of Health.

**In Banc, November 6, 1907.**

1. **PHYSICIAN'S LICENSE: Matriculant.** Unless the applicant for a license to practice medicine was a matriculant in a medical college prior to March 12, 1901, he was not, under the act of March 21, 1903, entitled to a license in 1904.

2. ———: ———: **Discretion of Board.** The Board of Health cannot escape a peremptory writ of mandamus to issue to a physician a license to practice medicine by a claim that they investigated the evidence he offered showing him to have matriculated in a medical college prior to March 12, 1901, that they exercised their discretion on the subject and that their judgment is final. Discretion must always be reasonably exercised, and as to whether or not the board reasonably exercised it is a question for the courts.

3. ———: ———: ———: **Arbitrary.** It is not within the power of the State Board of Health to arbitrarily refuse to issue to an applicant a license to practice medicine.

4. ———: ———: ———: ———: **Evidence: Mandamus.** The State Board of Health cannot, against the rules of evidence, and the great weight of positive evidence in the case, that a graduate of a medical college on March 21, 1904, had prior to March 12, 1901, matriculated in a medical college, refuse to issue him a license on the plea that they have found he was not a matriculant prior to that date; and where that is their only defense the court by mandamus will compel them to issue him a license.

5. **ADMINISTRATIVE BODIES: Discretion.** Even where administrative bodies are clothed with discretionary powers an unreasonable exercise of that discretion is a subject-matter for review in the courts.

6. ———: ———: **Arbitrary Exercise: Remedy.** The only remedy of one aggrieved by the arbitrary refusal by an administrative board to issue a license to an applicant who under the law and the clear evidence is clearly entitled to such license at its hands, is by mandamus.

7. ———: ———: **Ministerial Power.** The State Board of Health acts ministerially, and not judicially, in passing on the right of an applicant for a license to practice medicine. If the conditions prescribed by law exist, the license must be granted;

and the court will by mandamus compel the board to issue the license.

8. ———: **Evidence.** Nor can an administrative board act arbitrarily against the great weight of positive evidence that the applicant has met those conditions.

## Mandamus.

PEREMPTORY WRIT AWARDED.

*J. A. McLane* for relator.

*Herbert S. Hadley,* Attorney-General, and *N. T. Gentry,* Assistant Attorney-General, for respondents.

Even if the respondents erred in reference to the weight of evidence, that error is one that cannot be corrected in a proceeding of this kind. If their action was the result of bias, prejudice or ill-will; or if they acted harshly, oppressively or without any evidence to support them, it is frankly conceded that their action might be reviewed and reversed. Respondents are a quasi-judicial body; it is their duty to investigate and determine many things which the law has very properly assigned to their good judgment. If the evidence as to the moral character of the relator was conflicting, the commissioner and also the Supreme Court would defer to the finding of respondents thereon. Courts will not usurp the functions of that board, and, in a mandamus proceeding, decide upon the weight or preponderance of the evidence. So, where there is a conflict in the evidence as to the date of relator's matriculation, it is earnestly insisted that the same rule of law should be applied. In substance, this has been the holding of our courts heretofore on similar questions. State ex rel. v. Gregory, 83 Mo. 136; State ex rel. v. Lutz, 136 Mo. 640; State ex rel. v. Goodier, 195 Mo. 560; State v. Smith, 190 Mo. 706; Champagne v. Hamey, 189 Mo. 729.

GRAVES, J.— Relator, Dr. A. S. McCleary, graduated from the Eclectic Medical University of Kansas City, Missouri, March 24, 1904, and received his diploma therefrom on that date. This school is duly incorporated under the laws of Missouri, and has a four-years' course of study. He claimed to have been a matriculant in said school in the fall of 1900, and therefore prior to March 12, 1901. On or about November 27, 1906, he presented to relators all the evidence required by the act approved March 21, 1903, to entitle him to a license from respondents, who constitute the State Board of Health, to practice medicine and surgery in the State of Missouri. Relator on said date tendered to respondents the required fee under the statute, but respondents refused to grant to relator a license and thereafter relator applied to this court for a writ of mandamus, and the alternative writ was duly granted. Among other things stated in the alternative writ, we find:

"That said Board of Health of the State of Missouri has failed, neglected, and still fails and neglects, to issue to relator a license to practice medicine in the State of Missouri; that said Board is composed of seven physicians, five of whom are Allopathic physicians; that said Board is biased and prejudiced against relator; that relator is a matriculant and graduate of an Eclectic School of Medicine; that a majority of the members of said Board of Health belong to the regular or Allopathic School of Medicine, a school or system of medicine entirely different and opposed to the school or system of medicine of which relator is a matriculant and graduate; that the school of medicine of which a majority, or five of said members of said Board belong, are opposed and averse to giving relator a license to practice medicine in the State of Missouri, because relator is a matriculant and graduate of a system of medicine differing from

the system of medicine of which a majority of the members of said State Board of Health are graduates.''

The return of respondents is in this language:

''Now, on this day, come the respondents, and for return to the alternative writ herein, admit that it is true as alleged in the alternative writ, that the respondents constitute the State Board of Health of Missouri, having been duly appointed and qualified as members of said Board; they admit that on the 27th day of November, 1906, the relator appeared before respondents, as members of said Board of Health, in Kansas City, Missouri, and tendered to them the sum of fifteen dollars, the fee allowed by law; they admit that the relator then and there produced satisfactory proof of his good moral character; and they admit that he then and there produced satisfactory evidence that he graduated from the Eclectic Medical University on March 24, 1904, and received a diploma, properly signed by the officers and professors in said University, which diploma was dated March 24, 1904. But the respondents deny that the relator produced to them satisfactory proof that he matriculated in the Eclectic Medical University, or in the medical department of any university, school or college prior to March 12, 1901. And for further return respondents say that relator produced before them at said time and place a paper which purported to be signed by an officer of said Eclectic Medical University and which purported to be a receipt for the matriculation fee of relator in said University and which purported to be signed November 12, 1900; that upon careful inspection of said receipt with a microscope, it was discovered that the same was originally dated November 12, 1901, and that the same had been changed to 1900. That the relator produced before them certain affidavits, purporting to have been signed

by teachers in said University, which affidavits stated that the relator had attended lectures in said University in the fall of 1900. That they examined certain records and papers of said University, but failed to find the name of relator in the list of scholars of said University for the year 1900. Respondents further say that they are not satisfied with the evidence so produced before them that the relator matriculated as a student in said University prior to March 12, 1901; and upon the evidence so produced, declined to issue a license to relator to practice medicine in Missouri. And further, respondents deny each and every other allegation in the alternative writ. Wherefore, the premises considered, respondents pray that no peremptory writ of mandamus issue herein, that the alternative writ be discharged, and that respondents be awarded their costs herein."

The reply to this return is a specific denial of all new matter in the return.

Hon. A. L. Cooper was appointed commissioner by this court to take the testimony, and after so doing, he has made a report in which there is a finding both of fact and law, accompanied with all the testimony in the case. The report is one evidently prepared with great care. The report concludes as follows:

"My findings and conclusions are, therefore, as follows:

"1. The relator did matriculate in the Eclectic Medical University of Kansas City, Missouri, prior to March 12, 1901, and established that fact by the great weight of the evidence, both at the hearing before the Board of Health and before me.

"2. The Board of Health did not give to the relator's evidence the weight and consideration to which it was entitled and in that respect acted without due regard to the legal rights of relator.

"3. I find, and the pleadings admit, that he had

complied with all other conditions required by the statute.

"I therefore respectfully recommend that the peremptory writ prayed for be issued."

We have gone through the evidence, and the conclusions of the commissioner, as to the facts, are the only ones which could have rightfully been reached. As to the law, we will discuss that in the course of the opinion.

## OPINION.

An examination of this record shows that the overwhelming evidence, both before the commissioner, and previously before the State Board of Health, is to the effect that relator had matriculated in the Eclectic Medical University of Kansas City, Missouri, prior to March 12, 1901. All other requisites for a license stand admitted by the return. In other words, the only disputed question is, was the applicant, Dr. McCleary, a matriculant in said school prior to March 12, 1901? If he was, he was entitled to his license; if he was not, then it was properly refused.

Relator bottoms his right to a license on the Act of 1903, approved March 21, 1903, in words as follows:

"It is not intended by this act to prohibit gratuitous service to and treatment of afflicted and this act shall not apply to commissioned surgeons of the United States army, navy and marine hospital service, nor to any student who has matriculated in a medical college on or prior to March 12, 1901, and it shall be the duty of said board of health on receiving a fee of fifteen dollars from said student to issue to him a license to practice medicine when said student presents a diploma from any medical college of this State."

Under the facts of this case and under this law the only thing for respondents to do was to rightfully

determine the question as to whether or not the relator was a matriculant in this school prior to March 12, 1901. On this question the respondents held adversely to relator. We are, therefore, required to face the question, as to whether or not this finding of the respondents is final and not subject to review in this court. Respondents claim that they exercised their discretion on this question and that their judgment is final. If so, there is an end to this cause. But in this we do not assent to the contentions of respondents. Discretions must always be reasonably exercised. As to whether or not they are reasonably exercised is a question for the courts. The statute requires the issuance of a license upon a proper showing and it is not within the power of the Board of Health to arbitrarily refuse it. In the case at bar the sole and only question for respondents to determine, under the admissions in the pleadings before us, was as to whether or not the relator had matriculated in the medical college mentioned above prior to March 12, 1901. Now if the Board of Health, against all the rules of evidence and against the great weight of the evidence, as evinced by this record, arbitrarily refused to grant the license, will mandamus lie to compel them to do so? This is the sole contention of respondents. They claim that they have exercised their best judgment, and having done so the incident is finally closed. Does the law place in the hands of administrative boards such arbitrary power? We think not. If so, the courts are not open to the aggrieved, if such there be, and this case is wrongfully here. If so, such boards can arbitrarily refuse any applicant the rights prescribed by the law, and he is without remedy. If so, such a board can hear the evidence, and against all of the evidence, place its *ipse dixit*, and refuse to the applicant the privileges granted by the law. Such a doctrine is not consonant with reason, and is not the law. Grant

it, for the purposes of this case, that these boards are clothed with discretionary powers, yet an unwarranted exercise of that discretion is a subject-matter for review. They are not judicial bodies. [State ex rel. v. Goodier, 195 Mo. l. c. 560.] In that case this court said: "The duties of the board are of an administrative or ministerial character, and therefore as long as its acts are within the scope of the exercise of a reasonable discretion it is free to act. [State ex rel. v. Gregory, 83 Mo. 123.] If, perchance, through a misunderstanding of the law, the board should refuse to perform a given duty, the writ of mandamus will right the wrong. [State ex rel. v. Lutz, 136 Mo. 633.] But the writ of prohibition does not go against such a body; it goes only against a court or tribunal exercising judicial functions. We have very recently held that a writ of prohibition would not go against the Board of Election Commissioners, because although it exercised a large discretion (in the case there under review having to investigate and find from the evidence and decide which of two antagonistic sets of claimants was entitled to recognition as the lawful committee of a political party), yet it was the act of a ministerial and not a judicial body and the act to be performed was not a judicial act. [Kalbfell v. Wood, 193 Mo. 675.]"

But even if it were a judicial tribunal, and its discretion was arbitrarily exercised, such action would be subject to review. We have always so held in matters of granting a continuance and similar matters, and a citation of cases would be superfluous. In the case at bar there is no remedy by appeal, and the only remedy is the one invoked in this case.

But beyond all this, and decisive of this case, the board acts ministerially in a matter of this kind. If the conditions exist, the license must be granted. If the conditions exist there is no discretion, but the li-

cense must be issued. If the board cannot act judicially, as was held in the Goodier case, supra, this case resolves itself into the plain proposition, do or do not the conditions exist? If so the license must go. The great weight of the evidence shows that the relator had matriculated prior to March 12, 1901, and such being the case, the peremptory writ of mandamus must go.

We conclude by saying that boards of this character, having merely administrative and ministerial duties to perform, cannot act arbitrarily, nor against the great weight of the positive testimony upon a given question, and if they do so act, there is redress for the party aggrieved, by an action of this kind.

From these views it follows that the peremptory writ should go, and it is so ordered.

All concur.