# CASES

## ARGUED AND DETERMINED

IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS· AND THE CIRCUIT AND DISTRICT COURTS

HUIDEKOPER v. HADLEY et al.

(Circuit Court of Appeals, Eighth Circuit. March 21, 1910.)

No. 3,143.

1. STATES (§ 191*) — MANDAMUS AGAINST STATE OFFICERS — SUIT AGAINST STATE.

Rev. St. Mo. 1899, § 9140 (Ann. St. 1906, p. 2119), requires each county assessor to take an oath to faithfully and impartially perform the duties of his office and to assess all the property in the county at what he be· lieves to be its true cash value. Section 9180 requires that he value and assess all property in his county at such value, and sections 9127 and 9195 require a statement or abstract of the taxes so assessed in each county to be forwarded to the State Auditor to be by him laid before the State Board of Equalization, which by Const. Mo. art. 10, § 18 (Ann. St. 1906, p. 293), consists of the Governor, State Auditor, State Treasurer, Secretary of State, and Attorney General, who are required to adjust and equalize the valuation of real and personal property among the several counties, etc. Section 9126 provides that a majority of the board shall constitute a quorum, and section 9127 prescribes the manner in which the equalization shall proceed. Held, that a petition for mandamus against the members of the board, alleging that a majority thereof refused to permit the board to perform its duty and to equalize the taxes, as pre-scribed, and seeking to compel them to perform their duty in that behalf. was not a proceeding against the state, in violation of Const. U. S. Amend. 11.

[Ed. Note.—For other cases, see States, Cent. Dig. §§ 179–184; Dec. Dig. § 191.*

What are suits against states within the meaning of constitutional amendment 11, see note to Murray v. Wilson Distilling Co., 92 C. C. A. 25.]

2. TAXATION (§ 447*)—"EQUALIZATION."

The words "equalize" or "equalization," as used in revenue statutes creating a board of equalization, means to bring the assessment of differ-ent parts of a taxing district to the same relative standard so that no one of the parts may be compelled to pay a disproportionate part of the tax.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 447.*

For other definitions, see Words and Phrases, vol. 3, pp. 2427, 2428.]

3. MANDAMUS (§ 117*)—OFFICERS—DUTY.

The Missouri Legislature, to execute Const. art. 10. § 3 (Ann. St. 1906, p. 275), providing that taxes shall be uniform on the same class of sub-jects within the territorial limits of the authority levying the tax, pro-vided a scheme for equalizing the valuation of property among all the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
177 F.—1

counties of the state, based on actual value, by Rev. St. 1899, § 9127 (Ann. St. 1906, p. 2116), and to work out such scheme, created a state board of equalization, by Const. art. 10, § 18 (Ann. St. 1906. p. 293), and by Rev. St. § 9127, charged such board with the duty of equalizing property as classified by the Legislature. *Held,* that such board had no discretion to divide the counties of the state into several groups and equalize the different classes of property only within each group, and hence mandamus was maintainable to compel the members of the board other than the Governor to equalize the assessment throughout the state.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 249; Dec. Dig. § 117.*]

**4. MANDAMUS (§ 72*)—PUBLIC OFFICERS—DISCRETION.**

While the lawful exercise of discretion by public agents or officers cannot be controlled by mandamus, the writ will lie to compel the person or body in whom the discretion is lodged to proceed to exercise its discretion, and, in case the manner of such exercise has been prescribed by law, to compel the person or body not to proceed in any other way.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 134; Dec. Dig. § 72.*]

**5. MANDAMUS (§ 64*)—EXECUTIVE OFFICERS—GOVERNOR.**

The Governor of the state, while serving as a member of the State Board of Equalization, is performing an executive duty. in no different sense than when performing any ministerial act devolving on him as chief executive, and hence mandamus may not be issued against him to coerce or control his action as a member of such board, though it was maintainable against the others.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 129; Dec. Dig. § 64.*]

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

Petition for mandamus by Arthur C. Huidekoper against Herbert S. Hadley and others. The petition was dismissed on plea to the court's jurisdiction, and plaintiff brings error. Reversed as to all the respondents except Herbert S. Hadley, and remanded, with directions.

See, also, 171 Fed. 118.

W. D. Tatlow (E. Y. Mitchell, on the brief), for plaintiff in error.

John M. Atkinson and John T. Barker (Elliott W. Major, B. R. Dysart, E. S. Jones, and Guthrie & Franklin, on the brief), for defendants in error.

Before ADAMS, Circuit Judge, and RINER and WM. H. MUNGER, District Judges.

ADAMS, Circuit Judge. This was a petition for a writ of mandamus against the members of the Board of Equalization of the State of Missouri, the members of a like board of the county of Macon, and the assessor and collector of the revenue of that county, to compel them to discharge duties which the relator, Huidekoper, avers they declined to perform. The Circuit Court sustained a plea to the jurisdiction, and, treating it also as a demurrer, dismissed the petition on two grounds: (1) Because the suit was against the state of Missouri in violation of the eleventh amendment of the Constitution, and (2) because the court was asked to review action of state officers resting in discretion. From that judgment error is prosecuted.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In order to understand the several questions which we are called upon to decide, a general statement of the case as made by the petition seems to be required.

Pursuant to authority conferred by law, Macon county in May, 1870, made a subscription to the capital stock of the Missouri & Mississippi Railroad Company and issued its negotiable bonds in payment therefor. The only recourse the holders of the bonds had for their payment was the right to compel the levy of a tax of one-twentieth of 1 per cent. upon the assessed value of the taxable property of the county and to participate with other creditors of the county in the proceeds of a tax of one-half of 1 per cent. authorized for general county purposes. Macon County v. Huidekoper, 134 U. S. 332, 10 Sup. Ct. 491, 33 L. Ed. 914, and cases cited. The relator became the owner of some of these bonds with attached coupons, and on default of payment recovered final judgments thereon. The subsequent securing of warrants upon the county treasurer and other futile proceedings taken to secure satisfaction of his judgments need not, for our present purposes, be dwelt upon. Suffice it to say the relator has not been able to collect his judgments, which amount in the aggregate to over $263,000, and has resorted to this proceeding to enable him to do so.

The gravamen of his petition is: That the annual levies of one-half and one-twentieth of 1 per cent. upon the valuation of the property in the county, as assessed by the assessor and equalized by the State Board of Equalization, are entirely inadequate to raise the necessary fund to pay his judgments. That the present assessor of Macon county and his predecessors for some time past have intentionally, purposely, and fraudulently failed to assess the property of the county at its true value in money, but have assessed it at as low a fractional part thereof as would suffice to meet local needs, and have so done for the purpose of preventing the creation of a fund to pay the indebtedness of the county. That assessors of other counties of the state have also placed low values upon the property of their counties for the purpose of escaping their just proportion of the state tax. That the State Board of Equalization well knowing these facts has for many years divided the counties of the state into groups, and, instead of equalizing the property among all the counties as required by law, has equalized it among the several groups only so that the property of the same class in one group of counties has been asssessed at a different per cent. of its value than the same property in other counties or in different groups of counties. That in no case has the property of the different counties of the state been so assessed or equalized at its true value in money, but on the contrary has been assessed and equalized on an average of from 30 to 50 per cent. only of that value. That the relator appeared before the State Board at its last session and informed its members of the fact that he was a judgment creditor of Macon county, advised them that the facts already detailed prevented the collection of his judgments, and demanded that the board equalize the various classes of property in Macon county on the basis of the real value in money and certify the same to the proper officer of that

county, to the end that, by the annual levies of one-half and one-twentieth of 1 per cent. allowed by law, a fund might be created to satisfy his judgments. That after a hearing of his petition a resolution was offered by Gov. Hadley, a member of the board, in the words following:

"That the true value in money of each class of property as the same is returned to this board for equalization in each county, be ascertained by this board; that this true value in money of each class of such property in each county be set aside in a tabulation to be prepared, and that where the value of any of the classes of property in any of the counties, as returned to this board, is less than its true cash value, that such per centum of its true value be added thereto by this board as will make its assessed value as equalized by this board, equal to its true value in money, so that all classes of property in all the counties will be, and is hereby equalized and assessed on a basis of its true value in money."

That this resolution was voted down by a vote of three out of the five members constituting the board. That afterwards a resolution was offered by Mr. Cowgill, vice president of the board, providing that the true value in money of each class of property be ascertained by the board and set aside in a tabulation to be prepared, and that in the event the value of any of the classes of property in any of the counties as returned to the board is less than 50 per centum of its true cash value such per centum shall be added thereto as will make its assessed value equal to at least 50 per cent. of its true value in money to the end that all classes of property in the counties shall be equalized and assessed on a basis of not less than 50 per centum of its true value in money. That this resolution also failed to carry by a vote of three to two.

It is then alleged that by the action of a majority of the board in the particulars just mentioned and in other respects unnecessary now to be repeated it arbitrarily, capriciously, and maliciously refused to equalize the property of the state and particularly that of Macon county on the basis of its true value in money and knowingly, unlawfully, and fraudulently pretended to equalize the property of Macon county at $8,270,123, when its members knew that its true value was in excess of $25,000,000, that the act of the majority in so refusing was done intentionally, malevolently, and fraudulently with a view and for the purpose of assisting the officers of Macon county to defeat the payment of relator's judgments.

It is further alleged that the pretended equalization of the property of Macon county as well as that of the property of the entire state has been fictitious and fraudulent, and that the majority of the board have given out that at the sessions of the board to be held in the years 1910, 1911, and 1912, during which years they remain in office, they will continue the unlawful and fraudulent method of equalizing the property of the state by fixing the value at only a fraction of its real value not in excess of 33 per cent. thereof

In short, the petition discloses that, by a majority of its members, the State Board has resorted to a method of dividing the counties of the state into groups and equalizing the values of property in each group without reference to values in counties embraced in other

groups, and that as a result of that and other methods complained of and of a deliberately formed and expressed purpose to continue them, the property of the state as a whole has been equalized and will be continued to be equalized, not at its true value in money, but at a small fractional part thereof only.   It is conceded in argument that the State Board cannot take action solely with respect to Macon county, but must act in the equalization of values on a comprehensive plan embracing the property of all the counties and independent municipalities of the state.

Notwithstanding the fact that the members of the board of equalization and the assessor and collector of taxes of Macon county are made parties to this action, it is conceded that the performance of the duty, upon which relator's remedy depends, rests primarily with the State Board; and it is only when that body shall have done its duty that the officers of the county can take effective action.   In other words, it is the position of counsel for the relator that no relief can be granted to the judgment creditor as against the action of the county assessor and other county officers until the State Board, as the final arbiter of values, shall have been appealed to and shall have done its duty.

Accordingly, the argument on both sides has been directed chiefly to the question whether the members of the State Board are amenable to this proceeding by mandamus.

It is claimed by the respondents that for three reasons they are not: First, because the proceeding against them is, in effect, one against the state of Missouri and, therefore, prohibited by the eleventh amendment of the Constitution of the United States; second, that their action in declining to equalize the property of the state as requested by the relator was the exercise of a discretion which is not reviewable by the courts; third, that as respondent Hadley is the Governor of the state he is not subject to the writ of mandamus to compel him to do a duty as a member of the Board of Equalization.

1. Is this proceeding a suit against the state?

Section 9140, Rev. St. Mo. 1899 (Ann. St. 1906, p. 4210), provides that the assessor of each county shall take an oath to faithfully and impartially perform the duties of his office and to assess all the property in the county at what he believes to be its actual cash value.

Section 9180 provides that the assessor shall value and assess all the property of his county according to its true value in money at the time of the assessment.

Sections 9127 and 9195 provide that a statement or abstract of the taxes so assessed in each county shall be forwarded to the State Auditor on blanks furnished by him, to be by him laid before the State Board of Equalization.

The Constitution of the state (article 10, § 18) creates the board and ordains that:

"There shall be a State Board of Equalization, consisting of the Governor, State Auditor, State Treasurer, Secretary of State and Attorney General. The duty of said board shall be to adjust and equalize the valuation of real and personal property among the several counties of the state, and it shall perform such other duties as are now or may be prescribed by law."

Section 9126 provides that a majority of the members of the board shall constitute a quorum, and that the members shall each take an oath or affirmation that he will "to the best of his knowledge and ability, equalize the valuation of real and personal property among the several counties in the state, according to the rules prescribed by this chapter for equalizing and valuing real property."

Section 9127 provides that the board after receiving from the auditor abstracts or statements of all the taxable property in the state, and after classifying the same under certain headings, "shall proceed to equalize the valuation of each class thereof among the respective counties of the state in the following manner:

"First, it shall add to the valuation of each class of the property, real or personal, of each county which it believes to be valued below its real value in money, such percentum as will increase the same in each case to its true value. Second, it shall deduct from the valuation of each class, real or personal, of, each county which it believes to be valued above its real value in money such percentum as will reduce the same in each case to its true value."

This brief epitome of legislation clearly discloses that the policy of the state requires property to be assessed on the basis of its true value in money, and that a duty is cast upon the State Board to equalize the property among the several counties of the state on that basis. Without now discussing the exact nature of that duty, its extent, or its limitations, it is sufficient, for our present purpose, to observe that it is an imperative duty imposed by the law of the state. A majority of its members constituting a working quorum refused to permit the board to perform that duty and compelled it to decline to do so. In so acting they did not stand for the state of Missouri and were not the state within the meaning of the eleventh amendment of the Constitution. A sovereign state must be presumed to be willing that its laws shall be obeyed. Through its laws it spoke to its servants and commanded them to do something. Certainly those servants by their act of disobedience do not represent or stand for the state. This suit, therefore, instead of being against the state, is against its servants to compel them to do a duty which, by accepting office, they agreed to perform.

A few authorities out of the many which might be referred to may not be out of place here.

In Board of Liquidation v. McComb, 92 U. S. 531, 23 L. Ed. 623, a decree restraining the Board of Liquidation of the State of Louisiana from making improper use of certain bonds was under review. The Supreme Court, speaking by Mr. Justice Bradley, said:

"The objections to proceeding against state officers by mandamus or injunction are: First, that it is, in effect, proceeding against the state itself; and, secondly, that it interferes with the official discretion vested in the officers. It is conceded that neither of these things can be done. A state, without its consent, cannot be sued by an individual; and a court cannot substitute its own discretion for that of executive officers in matters belonging to the proper jurisdiction of the latter. But it has been well settled, that, when a plain official duty, requiring no exercise of discretion, is to be performed, and performance is refused, any person who will sustain personal injury by such refusal may have a mandamus to compel its performance."

That the petition filed in this case does not seek to control the discretion of the members of the board will appear later in the discussion of that branch of the case.

In the case of Rolston v. Missouri Fund Commissioners, 120 U. S. 390, 7 Sup. Ct. 599, 30 L. Ed. 721, the trustees in a mortgage made by the Hannibal & St. Joseph Railroad Company sought to restrain the executive officer of the state from selling mortgaged property under a prior statutory mortgage in favor of the state on the ground that the liability for which the earlier lien was created had been satisfied, and that they, as trustees, were entitled to an assignment of the lien. Whether the suit was in effect a suit against the state and prohibited by the eleventh amendment arose. The court, speaking by Mr. Chief Justice Waite, said:

"It is next contended that this suit cannot be maintained because it is in its effect a suit against the state, which is prohibited by the eleventh amendment of the Constitution of the United States, and Louisiana v. Jumel, 107 U. S. 711 [2 Sup. Ct. 128, 27 L. Ed. 448], is cited in support of this position. But this case is entirely different from that. There the effort was to compel a state officer to do what a statute prohibited him from doing. Here the suit is to get a state officer to do what a statute requires of him. The litigation is with the officer, not the state."

In Graham v. Folsom, 200 U. S. 248, 26 Sup. Ct. 245, 50 L. Ed. 464, judgment creditors of a township, whose judgment was founded upon certain bonds issued in favor of a railroad, sought by mandamus to compel county officers to levy and collect a tax to satisfy their judgment. It was contended that those officers were state officers, and, being so, that the suit was an attempt to require the state to perform its contract, and was. therefore, in effect a suit against the state, which was prohibited by the Constitution. This contention was denied on the authority, among other cases, of Rolston v. Fund Commissioners, supra.

In Taylor v. Louisville & N. R. Co., 31 C. C. A. 537, 88 Fed. 350, a suit was instituted to enjoin certain state officers from certifying a tax which they claimed the right to do by authority of the state, but which the complainant averred was without authority. Judge Taft, speaking for the Court of Appeals for the Sixth Circuit in that case, said:

"This is not a suit against the state. It is a suit against individuals, seeking to enjoin them from doing certain acts which they assert to be by the authority of the state, but which the complainant avers to be without lawful authority. The point has been so often decided by the Supreme Court of the United States that it is sufficient to refer to a few of the cases."

We find nothing in the later decisions of the Supreme Court particularly in Ex parte Young and General Oil Co. v. Crain, 209 U. S. 123, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932, and 209 U. S. 211, 28 Sup. Ct. 175, 52 L. Ed. 754, where the subject under consideration was exhaustively discussed, in conflict with the foregoing.

In the case of Raymond v. Chicago Traction Co., 207 U. S. 20, 28 Sup. Ct. 7, 52 L. Ed. 78, many expressions are found and urged upon our attention by learned counsel for respondents to the effect that the

action of the State Board of Equalization in making the assessment there involved was the action of the state, but those expressions in our opinion are inapplicable to the present case. In that case the traction company was contending that the assessment of its property as made by the board, if enforced, would violate the fourteenth amendment of the Constitution of the United States by taking its property without due process of law, and would deprive it of the equal protection of the laws. It was there held that the State Board was an instrumentality through which the state acted, and that the provisions of the fourteenth amendment prohibited the taking of property without due process of law by the state, not only through its Legislature or by its executive or judicial department, but by or through any other instrumentality whatsoever. The conclusion there announced was not that the Board of Equalization was the state within the meaning of the eleventh amendment, so as not to be suable without its consent, but that the board was an agent of the state in taking steps preliminary to the imposition and collection of taxes charged to have been illegal, and was, therefore, the state within the meaning of the fourteenth amendment. Most obviously the doctrine of this case has nothing to do with the question now under consideration.

The contention that the present suit is prohibited because against the state, and therefore in violation of the eleventh amendment of the Constitution, is not sound and cannot be sustained.

2. Was the action of the board here complained of the exercise of a discretion with which the courts cannot interfere? The learned trial court, from the showing made by the petition alone, answered this question in the affirmative. Whether that answer is correct or not depends upon the applicatory law and the facts stated in the petition which for the purposes of this case must be taken to be true.

Article 10, § 3, of the Constitution of Missouri, ordains that:

"Taxes may be levied and collected for public purposes only. They shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and all taxes shall be levied and collected by general laws."

The Legislature of the state, by way of executing this constitutional mandate, provided a scheme for equalizing the valuation of property among all the counties of the state based on actual value as a standard of procedure. Section 9127, Rev. St. 1899. To work out this general scheme the State Board of Equalization was created (article 10, § 18, Const. Mo.) and endowed with the power and charged with the duty of equalizing the values of property as classified by the Legislature in the manner prescribed by section 9127, supra. The words "equalize" or "equalization," as used in revenue statutes of the kind now under consideration, have an accepted meaning throughout the country. Cooley, in his work on Taxation (2d Ed. p. 421), says:

"Equalization of assessments has, for its general purpose, to bring the assessments of different parts of a taxing district to the same relative standard so that no one of the parts may be compelled to pay a disproportionate part of the tax."

The statute imposing a duty upon the State Board, taken in con-nection with the constitutional requirements of uniformity, is impera-tive that the equalization shall comprehend all the counties and similar subdivisions of the state, and shall be accomplished by taking the ab-stracts or returns of the county and city assessors as the basis, and adding to or deducting therefrom enough to bring the equalized valua-tion to the true value of the property of such county or city.

With this understanding of the legal duty resting upon the State Board, let us examine the petition and ascertain therefrom what the board actually did in response to the demand of the relator that it pro-ceed to equalize the property of Macon and other counties according to its true value in money.

In the first place, it is made to appear that the board arbitrarily divided the counties of the state into several groups, and proceeded to equalize the property in the counties composing each group without equalizing the property of the several groups themselves, and thereby, as it is claimed, defeated the uniformity of values among all the coun-ties as contemplated by the law. It is also charged that the board ignored the statutory command requiring it to equalize the valuation of the property in the several counties and independent cities by adding or deducting from the valuation as returned by the local assessing boards such sum as would bring the same to the true value of the prop-erty, and in lieu thereof adopted a standard of valuation not in ex-cess of 33 per cent. of the real value of the property and equalized the valuations throughout the state on that basis; that the standard so adopted and the method so employed by the State Board was by direc-tion of a working majority arbitrarily, capriciously, and uniformly followed for many years with the intent and purpose, among other things, of aiding the officers of Macon county in defeating the collec-tion of the relator's judgments.

The rule is well settled and fully recognized by us that when discre-tion is conferred upon public agents or officers their acts in the lawful exercise of that discretion cannot be controlled by mandamus. The rule is also well settled that, although the exercise of discretion will not be controlled by mandamus, yet the writ will lie to compel the person or the body in whom the discretion is lodged to proceed to its exercise. In view of these rules, we are of opinion that the discretion which cannot be controlled by mandamus is that discretion, and that only, which the law has vested in the person or body to be exercised. If the law has pointed out how or in what way the discretion shall be exercised, it is obviously not the exercise of the discretion imposed by law to proceed in any other way. To so proceed would be contrary to the law and would be the exercise of arbitrary power rather than dis-cretion. To decline or refuse to proceed according to law or in the way pointed out by law is in our opinion equivalent to not proceeding at all. In other words, the discretion which will withstand review by the courts must be exercised under law and not contrary to law.

In City of Madison v. Smith, 83 Ind. 502, 516, it is said:

"It is no doubt the general rule that an inferior tribunal will only be com-pelled to act—not to make a decision one way or the other; but where a body not strictly judicial, although possessing quasi judicial powers, is under

an absolute duty to act, and to act only in a certain way, the performance of that duty, both as to the action and its character, will be coerced by mandate. * * * Where there is a discretion, courts will not compel its exercise in any given direction; but where, upon the facts, the duty is a plain and absolute one, it is otherwise."

In State ex rel. v. Herrald, Com., 36 W. Va. 721, 15 S. E. 974, it was held that where the assessor was required to impose a value upon property as town lots, and undertook to do so by the acre or tract, its action was not the exercise of discretion, and could be corrected by mandamus.

In the case of State Board of Equalization v. People, 191 Ill. 528, 61 N. E. 339, 58 L. R. A. 513, the State Board adopted a method of assessing property contrary to that prescribed by law. A mandamus proceeding was instituted to correct it. The trial court commanded the board to proceed to value and assess the property in the manner prescribed by law, and specified what that was. The Supreme Court, in affirming that judgment, said:

"The court does not, by its said order and judgment, undertake to control the discretion or judgment of the respondents in the valuation or assessment of the capital stock, including the franchises, of said corporations. It only lays down the rules of law which govern and the methods which should be pursued by the respondents in making such valuation and assessment. This we think proper."

In the case of Ramsay v. Hayes, 187 N. Y. 367, 80 N. E. 193, it was held by the Court of Appeals of that state that where a commissioner of a relief fund adopted a method for determining the amount, contrary to law, the remedy was by mandamus to compel him to fix the pension according to the rule prescribed by statute therefor. To the same effect is People v. Supervisors of Sanilac County, 71 Mich. 16, 38 N. W. 639, and City of Cleveland, Tenn., v. United States, 93 C. C. A. 274, 166 Fed. 677.

In State ex rel. v. Adcock, 206 Mo. 550, 105 S. W. 270, 121 Am. St. Rep. 681, the Supreme Court of Missouri sustained a proceeding by mandamus against the State Board of Health and held that the law does not place in the hands of administrative parties arbitrary power, and that their simple ipse dixit is not sufficient evidence of exercise of lawful discretion.

In Illinois State Board of Dental Examiners v. People, 123 Ill. 227, 13 N. E. 201, the Supreme Court of Illinois observed:

"A public officer or inferior tribunal may be guilty of so gross an abuse of discretion or such an evasion of positive duty, as to amount to a virtual refusal to perform the duty enjoined, or to act at all in contemplation of law; in such a case mandamus will afford a remedy"—citing Tapping on Mandamus, 66 and 19; Wood on Mandamus, 64.

The United States Circuit Court of Appeals for the Sixth Circuit, in the case of Cunningham v. City of Cleveland, Tenn., 82 C. C. A. 55, 152 Fed. 907, in a case involving a question similar to that now before us, observed:

"So long as the board acts lawfully and in good faith, its discretion cannot be supervised by the court. But it cannot, under the guise of its discretion, be permitted to accomplish an unlawful purpose."

We conclude, therefore, that the proceedings of the State Board of Equalization in so far as they were not taken according to law and certainly in so far as they were taken in disregard and violation of the law are not protected from judicial control as the exercise of a vested discretion.

3. The conclusions already reached dispose of the objections made in the trial court to issuing the writ of mandamus in this case, but it is now urged as an additional reason against it that the Governor of the state, who constitutes one member of the Board of Equalization, cannot be coerced by the writ of mandamus to perform any executive duty, and that the balance of the board cannot be compelled to act without his co-operation. The Governor, who is the chief executive officer of the state and as such required "to perform such duties as may be prescribed by law" (article 5, § 1, Const.), including service upon the State Board of Equalization (article 10, § 18, Const., and section 9127, Rev. St.), when acting in that capacity is performing an executive duty in no other or different sense than when performing any ministerial act devolving upon him as chief executive of the state.

Mr. High, in his work on Extraordinary Legal Remedies (3d Ed. § 120), after citing and considering many authorities on the subject, says that, according to the clear weight of authority, "the chief executive of the state is, as to the performance of any and all official duties, entirely removed from the control of the courts, and that he is beyond the reach of mandamus, not only as to duties of a strictly executive or political nature, but even as to purely ministerial acts whose performance the Legislature may have required at his hands."

Judge Cooley, in delivering the opinion of the Supreme Court of Michigan in Sutherland v. Governor, 29 Mich. 320, 18 Am. Rep. 89, calls attention to the practical difficulty of distinguishing between political and ministerial duties, and says:

"But when duties are imposed upon the Governor, whatever be their grade, importance, or nature, we doubt the right of the courts to say that this or that duty might properly have been imposed upon a Secretary of State, or a sheriff of a county or other inferior officer, and that inasmuch as, in case it had been so imposed, there would have been a judicial remedy for neglect to perform it, therefore there must be the like remedy when the Governor himself is guilty of a similar neglect. The apportionment of power, authority, and duty to the Governor is either made by the people in the Constitution, or by the Legislature in making laws under it; and the courts, when apportionment has been made, would be presumptious if they should assume to declare that a particular duty assigned to the Governor is not essentially executive, but is of such inferior grade and importance as properly to pertain to some inferior office, and consequently, for the purposes of their jurisdiction, the courts may treat it precisely as if an inferior officer had been required to perform it. To do this would be not only to question the wisdom of the Constitution or the law, but also to assert a right to make the Governor the passive instrument of the judiciary in executing its mandates within the sphere of his own duties. Were the courts to go so far, they would break away from those checks and balances of government which were meant to be checks of co-operation, and not of antagonism or mastery, and would concentrate in their own hands something at least of the power which the people, either directly or by the action of their representatives, decided to entrust to the other departments of the government."

In State ex rel. v. Stone, 120 Mo. 428, 25 S. W. 376, 23 L. R. A. 194, 41 Am. St. Rep. 705, the Supreme Court of Missouri cited and considered the numerous authorities relating to this subject and stated the following conclusion:

"Abundant authority establishes the position here taken that mandamus will not issue to the Governor to compel the performance of any duty pertaining to his office, whether political or merely ministerial; whether commanded by the Constitution or by some law passed on the subject."

This doctrine was afterwards affirmed in the later case of State ex rel. v. Meier, 143 Mo. 439, 45 S. W. 306.

Whether, therefore, the duty imposed upon the Governor of Missouri to act as a member of the State Board of Equalization is ministerial, executive, or political in its character, he is not, according to the law of this state as interpreted by its highest judicial tribunal, responsible to the judiciary for his action. The high sense of duty which must be presumed to actuate the chief executive of a state is the sole arbiter to which appeal can be made in such matters.

Whether the decision of the highest judicial tribunal of the state exempting the Governor from coercement by the writ of mandamus is so a construction of the Constitution and statutes of Missouri or so a rule of property or action in the state, as under familiar rules bind the federal courts and forbid their independent judgment may be doubted. As to this we desire to express no opinion.

The Supreme Court of the United States, in Burgess v. Seligman, 107 U. S. 20, 34, 2 Sup. Ct. 10, 21, 27 L. Ed. 359, after laying down the rule governing the exercise of independent judgment by the federal courts in cases where state courts have made decisions which were not, properly speaking, controlling upon the national courts, said:

"But even in such cases, for the sake of harmony and to avoid confusion, the federal courts will lean towards an agreement of views with the state courts if the question seems to them balanced with doubt. Acting on these principles, founded as they are on comity and good sense, the courts of the United States, without sacrificing their own dignity as independent tribunals, endeavor to avoid, and in most cases do avoid, any unseemly conflict with the well-considered decisions of the state courts."

In view of these wise and temperate observations and of the fact that the Missouri doctrine is in harmony with the great weight of authority, we shall conform to that doctrine, and hold that the respondent, Hadley, is not subject to the writ of mandamus in the present case.

But this is not conclusive of the inquiry before us. The Governor is only one out of five members of the State Board of Equalization. Any three of them, according to the statute (section 9126, Rev. St.), constitute a quorum for the transaction of business. The reason why the Governor cannot be coerced by mandamus is that he needs no such coercion; he is conclusively presumed to be willing to perform all his executive duties. His constitutional obligation is to see that the laws of the state shall be faithfully executed (article 5, §§ 4, 6, Const.) and his oath of office requires him to support the Constitution and demean himself faithfully in office (article 14, § 6, Const.). The very reasons which exempt him from liability to the writ of mandamus are the ones

which insure the performance of his duty as a member of the Board of Equalization. Not only is this theoretically true, but the petition in this case shows that it is actually so. He led a movement in the board to secure equalization of values according to law, and it must be conclusively presumed that he will take no different course when occasion requires him to act.

But whatever the fact may be in this regard, the board is not one which requires either unanimity of consideration or of action by all its members. By special provision of law (section 9126, Rev. St.) any three of them constitute a quorum and are, therefore, competent to transact the business of the board in the absence of the other members. If the Governor should be disabled by sickness or other infirmity from attending the sessions of the board, can it be doubted that the remaining members of that body could be compelled to proceed with the performance of their duty? Obviously not. Accordingly, we think the writ of mandamus may lawfully be awarded to secure action by a statutory quorum of the board in this case when circumstances are such that the entire membership cannot be reached by that writ.

Other less important questions have been argued to us, but they involve nothing which compels a different conclusion from that which we have reached.

When the writ shall be issued, as it must be, the return made and the proof, if any, taken, the court will doubtless better understand all the facts and circumstances of the case and be better able to consider some of the contentions of learned counsel concerning the fiscal policy of the state and the proper exercise of discretion by its officers. As it is, however, the petition, to the averments of which we are necessarily confined, makes it appear that the relator's judgments against Macon county, which a just regard for civil rights requires should be paid, are rendered practically worthless by a failure to discharge a duty imposed by law upon the respondents. For such a breach of duty there ought to be a remedy.

The judgment must be reversed as to all the respondents except Gov. Hadley, and the cause remanded to the Circuit Court, with directions to proceed in the usual way in such cases and in harmony with the views here expressed.

It is so ordered.