STATE ex rel. FARMERS BANK, Relator, v. TOWN-SHIP BOARD, et al., Respondents.

Kansas City Court of Appeals, April 5, 1915.

1. MANDAMUS: Township Funds: Statute Proviso: Discretion: Highest Bid. The statute provides that a township board must take bids from bankers of the rate per cent they will pay for the custody of the township funds and must award the funds to the one bidding the highest rate. But a proviso to such statute reserves to the board the right "to reject any and all bids." It was *held*, that this invests the board with a discretion to reject the highest bid, if such bid is that of an unfit or improper custodian.

2. ————: ————: Arbitrary Discretion: Mandamus. The discretion invested in a township board to reject bids for the custody of the township funds is a legal and fair discretion exercised in good faith, and not an arbitrary, capricious or oppressive discretion. If the latter is used, mandamus will lie.

3. ————: ————: Illegal Discretion: Vote of Bidder: Mandamus. Where the larger bid of a bank for township funds is rejected and a less bid accepted, because the bank's officers

voted against the members of the township board at the election; it was *held* that such act for such cause was an illegel, oppressive and arbitrary exercise of discretion and will be set aside by a proceeding in mandamus.

4. —————: **Bid: Statute: Rate of Interest: Equal Bid.** The statute concerning bids for the custody of township funds does not authorize anything in the bid except the rate of interest which will be paid. But if the bidders bid the same per cent, and they are otherwise equally proper custodians of the fund, the board, in deciding between these equal bidders, may consider, that one will furnish one a place of meeting for the board, with fuel and light.

5. —————: **Highest Bidder: Statute.** If the bidders for the custody of township funds are equally qualified and proper custodians of the funds and one bids a higher rate per cent than the others, he thereby becomes entitled to the fund under the express terms of the statute.

Appeal from Daviess Circuit Court.—*Hon. A. B. Davis,* Judge.

REVERSED.

*Leopard & Fair* for relator.

*Gillihan & Gillihan* for respondents.

ELLISON, P. J.—This is a proceeding by mandamus to compel the Township Board of Grand River Township, Daviess county, Missouri, to select the relator Bank as the depositary of the township road and school funds. An alternative writ was issued, but on a trial in the circuit court a peremptory writ was denied and relator appealed.

The statute (section 3803, R. S. 1909) authorizes the letting of township funds by the Township Board in same manner that county funds are let by the county court under section 3805, which reads as follows: "It shall be the duty of the county court . . . to publicly open said bids . . . and to select as the depositaries . . . the banking corporations, associations or individual bankers, whose bids respectively

made for one or more of said parts of said funds shall in the aggregate constitute the largest offer for the payment of interest per annum for said funds. Provided that the court shall have the right to reject any and all bids.''

There are two banks in Grand River Township in which is the town of Jameson. One of these is relator, ''The Farmers Bank of Jameson;'' the other is ''The Bank of Jameson,'' and it has been made a party respondent. It is easy to discover from the record that there is active competition between these banks, in a proper business way, for deposits. And it appears that on the advertisement for bids, which were to be made on the 10th of May, 1913, for the township funds, each bank prepared a bid of the rate of interest it would pay and submitted it to the respondent board on that day. On opening the bids, it was found that each was in proper form and that each bidder had complied with all requirements, and that relator's bid was an offer of a higher rate of interest than the other bank offered. Nevertheless, the board accepted the latter bank's offer of a less per cent, and awarded the fund to it.

There is no substantial dispute between the parties as to the facts. They are that the banks were solvent, reputable, and trustworthy institutions, and each was owned and managed by competent and trustworthy citizens of good reputation. The record is a concession that the funds would be safe, if deposited in either institution. The reason, given by the members of the board, why the high bid of relator was rejected and the low bid of the Bank of Jameson was accepted, was this: That the board had theretofore been always treated with much consideration by the latter bank; that it had furnished the board with a place to meet, and with heat, light and stationery; and this is really admitted in respondent's return.

But in addition, we think it apparent that other reasons existed—reasons which the law cannot countenance. The cashier of the relator asked the president of the board why it was when relator had made the highest bid, the other bank was awarded the money; that "we could give a bond for half a million dollars if you wanted it," and that "we cannot understand how you think you have treated us fairly in this matter." The president answered, that we treated you "no worse than you fellows done. You tried to beat me in the election." The president, himself, admitted, in his testimony, that the cashier said to him, that "he did not like to be set down on;" and that he replied, "Its no worse for us to set down on you than for you to sit down on me at the election;" but adding that "we didn't take that into consideration at all, when we considered the bids."

The respondent claims justification for its act in refusing relator's bid in the words of the proviso of the above quoted statute that the board had "the right to reject any and all bids." That proviso does give the board a discretion—it does authorize the board, in proper instances, to reject a bid that on its face appears to be the best, which, in reality, is not; Reagan v. County Court, 226 Mo. 79, 90. But the discretion meant is "a sound legal discretion, not a capricious, arbitrary, or oppressive one;" State ex rel. v. County Court, 41 Mo. 221, 226; State ex rel. v. Adcock, 206 Mo. 550, 556; State ex rel. v. Bourne, 151 Mo. App. 104. The matter was recently examined at length by the St. Louis Court of Appeals in State ex rel. v. Dreyer, 183 Mo. App. 463, 481-490, where the authorities are discussed and the conclusion we have stated is announced.

The last ruling on the subject by the Supreme Court, to which our attention has been called, is in Barrett v. Stoddard County, 246 Mo. 501. There the bank of Bloomfield and the Bank of Essex bid the same rate per cent for county funds. But the bid of

the former contained these words: "And further agrees to pay face value for all county warrants." And the bid of the latter contained these: "We further agree to maintain a paying station in the city of Bloomfield during the entire period of said contract." The county court's order awarding the funds recited that the court was "of the opinion that the bid of the Bank of Essex proposing to pay four and five-eighths per cent on daily balances, and in addition thereto to buy all warrants issued by said court not in excess of the revenue at par, is the best bid offered." It appears from this order that the Bank of Essex may have dropped its offer of a paying station in Bloomfield and added its agreement to buy warrants, after it submitted its bid; for the former does not appear in the court's acceptance and the latter does not appear in the bid. But, be that as it may, the decision of the court, as we understand from the language used at pages 509 and 510, is that the only bids authorized by the statute are a rate per cent for the money; and that other considerations have no place in the bid. But, if the bidders bid the same per cent (and, of course, are otherwise equally proper custodians of the fund) other considerations (in that case to pay par for county warrants) may properly be considered—may properly address themselves to the discretion of the court, in its conclusion as to which of the bidders, thus on an equal footing, shall be awarded the fund.

But, if the bidders are each qualified, and otherwise are proper custodians of the fund, and the rate per cent bid by one is higher than that of the others, the court should award the fund to such highest bidder. To reject it and accept a less per cent, would be to exercise an illegal and an arbitrary discretion, which, as we have seen, should not be allowed. The statute does not contemplate that anything other than a rate per cent shall be bid for custody of the money. If the terms of the statute are to be departed from, or

added to, confusion and unseemly embarrassment would quickly follow. If there is a highest bidder by a party who would be a fit and proper custodian, and no rightful disqualifying hindrance exists, he is entitled to the fund.

Our attention has been called to State ex rel. v. Meier, 142 Mo. App. 309. That case did not show an abuse, or arbitrary exercise of discretion, and fell under the general rule that mandamus will not lie to control the discretion entrusted by the law to public officials, which has been exercised in good faith. That case, and the cases therein cited, are examined and distinguished by the St. Louis Court of Appeals in State ex rel. v. Dreyer, supra.

Since the time for which the funds were to be let has now about expired, we think it not proper to disturb the present situation by any affirmative order and therefore merely reverse the judgment. All concur.